GEORGE BLISS and Others, as Executors, etc., of ELIZABETH FOGG, Appellants, v. CHARLES B. FOSDICK, Individually, etc., and Others, Respondents, and by Others, Appellants.

*Appeal by any party aggrieved — trust, void if there is no beneficiary — creation of a trust — granting of a new trial.*

In an action brought by executors to compel a person acting as trustee to transfer to them certain certificates of stock, the question presented for decision was whether the executors or the trustee were entitled to the certificates.

*Held*, that the question was one of title, and a decision against the plaintiffs' title placed them in the position of parties aggrieved, and that they had a right to appeal therefrom.

It is doubtful if a judgment rendered upon an answer of one defendant against his co-defendants leaves the persons against whom the judgment is awarded, though in default in their answer to the plaintiff, in such a position that they have no right to appeal.

Under the laws of the State of New York a trust which is without a certain beneficiary who can claim its enforcement is void, whether good or bad, wise or unwise.

Elizabeth Fogg died, leaving a will and codicil, which were admitted to probate; they provided that out of the proceeds of the sale of certain shares of stock, to transfer which a power had been given to one Fosdick, a certain sum was to be divided among certain specified charitable associations. Upon the decedent's death the stock certificate in question was found in her safe deposit box with her other securities.

An action was brought by the executors of the decedent against Fosdick and others to compel the transfer of such certificate of stock.

The defendant Fosdick answered alleging that the testatrix had requested him to accept from her, in trust, the certificate of stock, and to distribute the proceeds thereof among certain charitable organizations to be designated, in such proportions as she should direct. That she indorsed the certificate to him that he might carry out the trust, and that she delivered to him a letter, signed by her, as follows:

"I this day place in your individual possession, conveying to you all my right, title and interest in one thousand (1,000) shares of stock of the Gutta Percha and Rubber Manufacturing Company. From the proceeds thereof I desire that you do appropriate the sum of one hundred thousand dollars in the name of Elizabeth Fogg, in sums of five thousand dollars each, to the various charity organizations of which a list is hereto annexed." There was no list of beneficiaries attached to the letter.

*Held,* that, if a trust was created, the beneficiaries acquired an interest which could not be divested by any act, either of the trustee or of the creator of the trust;

That whether a valid trust was created depended upon whether it was completed. by the designation of the beneficiaries.

The granting of a new trial is a matter resting in the sound discretion of the court, which should be exercised whenever justice requires it.

APPEAL by the plaintiffs, George Bliss and others, and by the defendants, Hiram H. Fogg and Benjamin Phipps, as executors, etc., of Mary J. H. Phipps, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 12th day of July, 1893, rendered upon the decision of the court, after a trial at the New York Special Term.

*J. Hampden Dougherty,* for the plaintiffs, appellants.

*Levi S. Tenney,* for the defendants, appellants.

*William N. Cromwell* and *Edward B. Hill,* for respondent Fosdick.

*James E. Chandler,* for respondent St. John's Guild.

O'BRIEN, J.:

This action was brought to compel the transfer to plaintiffs of 1,000 shares of the capital stock of the Gutta Percha and Rubber Manufacturing Company, once the property of Elizabeth Fogg, plaintiffs' testatrix, but assigned by her to the defendant Fosdick. Defendant Fosdick answered, setting up that the stock was transferred to him by the plaintiffs' testatrix, in trust, to divide among

certain charitable institutions. The other defendants are Mrs. Fogg's residuary legatees, and charitable institutions, which, except St. John's Guild, are beneficiaries under a codicil to decedent's will, which purported to dispose of said stock, and, including St. John's Guild, are likewise beneficiaries of the trust alleged by defendant Fosdick. St. John's Guild was not originally a party defendant, and was not named in the codicil, but, as it appeared on the trial that it was a beneficiary of the trust, if any, whereof the defendant Fosdick is trustee, it was made a party by order of court, and has answered, setting up the trust in said defendant, and claiming to be entitled to share in the proceeds of the stock in question.

It is insisted that neither the executors nor the residuary legatees have a right to appeal, and this argument is supported by the statement that the charitable institutions, which, with one exception, are entitled to take under both the codicil and the trust, do not appeal. The case of *Bryant* v. *Thompson* (128 N. Y. 426) is cited as authority for this contention.

In that case the executors and trustees brought an action for the construction of a will, asking the court to determine which of two parties was entitled to a certain fund in plaintiffs' hands as trustees. The judgment rendered decided the question, which was acquiesced in by both parties to the fund, and it was therein held that the plaintiffs, executors, were not parties aggrieved, and, therefore, under section 1294 of the Code, had no right to appeal.

The distinction between that case and this, we think, is apparent. This is an action brought by the executors for the purpose of compelling the defendant Fosdick, as trustee, to transfer the certificate of stock, and the question presented for decision is, whether the executors or the said defendant are entitled to the certificate. Thus, the question is one of title, and we think that a decision against plaintiffs' title placed them in the position of parties aggrieved, within the meaning of the Code of Civil Procedure, and, therefore, that they have the right to appeal.

The right of the residuary legatees to appeal is more uncertain. There can be no doubt that a judgment rendered in plaintiffs' favor, upon a defendant's default for failure to answer, would not leave to such defendant a right of appeal. But where, as here, the judgment rendered was not for the plaintiffs by reason of a default in

answering, but resulted from the service of the answer of a co-defendant demanding affirmative relief, which by the judgment was granted; and when we remember that under the Code practice there is no such thing as a defendant, upon whom a co-defendant so serves his answer, interposing any defense thereto, it is doubtful if a judgment awarded upon the answer of one defendant against his co-defendant leaves the person against whom the judgment is so awarded, though in default in his answer to plaintiff, in the position that he has no right to appeal.

It is not necessary, however, to determine the question whether the residuary legatees can appeal. Upon the motion made to dismiss the appeal of the executors on the ground that they had no appealable interest, we held adversely to such contention, and after a re-examination of the question we adhere to our former opinion in holding that, upon the facts here appearing, which distinguish it from the case of *Bryant* v. *Thompson* (*supra*), the executors have the right to appeal.

With this preliminary question thus disposed of, it remains to be determined whether the stock of the Gutta Percha and Rubber Manufacturing Company is to be distributed under the codicil, or whether the stock vested in the defendant Fosdick as trustee for certain charitable corporations.

Upon the trial it appeared that on January 3, 1891, Elizabeth Fogg died, leaving a will executed in 1888, and also a codicil executed December 21, 1890, both of which instruments were admitted to probate.

The codicil, after certain bequests to servants in her employ, provided as follows: "*Second.* Out of the proceeds of sale of one thousand shares of the Gutta Percha and Rubber Manufacturing Company, * * * and to transfer which a power has lately been given to Mr. Charles B. Fosdick, I do hereby give and bequeath the sum of one hundred thousand dollars to be equally divided among the following charitable associations," naming them.

Upon the death of Mrs. Fogg the certificate of stock was found in her safe deposit box with other securities belonging to her estate. She having died within two months after the execution of the codicil, the residuary legatees, in order to carry out her wishes, executed a release of all claim to this stock.

All the parties, except the defendants Fosdick and St. John's Guild, thought that the prayer of the complaint should be granted, requiring the transfer of the certificate by Fosdick to the executors for the purpose of having its proceeds distributed under the terms of the codicil, the residuary legatees going so far in that direction as not to interpose any answer. The defendant Fosdick, and subsequently St. John's Guild, answered, alleging that on December 19, 1890, Mrs. Fogg had requested him to accept from her in trust the certificate of stock and to distribute the proceeds thereof among certain charitable organizations to be designated, in such amounts and proportions as she should direct; that she indorsed the certificate to him that he might carry out the trust, and that on December twentieth she delivered to him a letter, signed by her, as follows : "I this day place in your individual possession, conveying to you, all my right, title and interest in one thousand (1,000) Shares Stock of the Gutta Percha and Rubber Manufacturing Company.

"From the proceeds thereof I desire that you do appropriate the sum of one hundred thousand dollars in the name of Elizabeth Fogg, in sums of five thousand dollars each, to the various charity organizations of which a list is hereto annexed."

As correctly held by the learned trial judge, if a trust was created, the beneficiaries acquired an interest which could not be divested by any act of either the trustee or the creator of the trust, and he cites with approval the language of the opinion in *Levy* v. *Levy* (33 N. Y. 107), that "if there is a single postulate of the common law established by an unbroken line of decisions, it is that a trust without a certain beneficiary who can claim its enforcement is void, whether good or bad, wise or unwise." While this may not be strictly so at common law, it is unquestionably the rule under our statute.

So far as Mrs. Fogg was concerned, it would appear from the testimony given as to the way in which the codicil came to be executed that she intended to have the stock disposed of thereunder; but as said, if a valid trust was created prior thereto, it was irrevocable, and the beneficiaries had the right to require its enforcement, notwithstanding the subsequent execution of the codicil.

There can be no doubt that on the 19th of December, 1890, and up to the time that the letter to Mr. Fosdick was signed, Mrs. Fogg

contemplated the creation of a trust, and the serious question in this case is, whether it was ever completed or rendered definite by the designation by Mrs. Fogg of the beneficiaries.

After the signing of the letter it would appear that Mr. Fosdick concluded not to accept the trust, and suggested to Mrs. Fogg that the proper way to accomplish her purpose was to make some change in her will, and it was in accordance with this suggestion that the codicil was subsequently executed. All the elements essential to constitute a valid trust, the subject being personal property, were present except the designation of the beneficiaries. And whether these were or were not designated is the difficult question in this case. The letter states that thereto annexed is a list of the charity organizations which are to be the beneficiaries, but it is conceded that no list of beneficiaries was attached to that letter. The question, however, still remains whether a list which was prepared by a Miss Norton, who was an attendant on Mrs. Fogg, was ever delivered by Mrs. Fogg to Mr. Fosdick.

The learned trial judge states in his opinion, and has found, that " on the morning of the 20th of December, 1890, when said Fosdick called at her said residence, the said list was delivered to the said Fosdick by said Elizabeth Fogg." If there is evidence sufficient to sustain this finding, then his conclusion is correct. And this involves an examination of the testimony given upon the trial to determine whether such finding is supported.

It is apparent that the only persons in a position to give testimony upon this subject are Mr. Fosdick and Miss Norton. The former, in testifying respecting this list, says : " If my recollection serves me now, when I went there in the morning [that is the 20th], Miss Norton had possession of that paper and she handed that paper to me, and I handed it back again to her and told her she should keep it among Mrs. Fogg's papers, and be sure that it was preserved. That is my recollection of that paper. * * * It was on the morning I went there with that letter * * * to be signed, and that letter is dated the 20th ; that is the only way I can remember it." And in another portion of his testimony he repeated again that Miss Norton handed him the paper containing a list of the charity organizations.

First Department, March Term, 1894.          [Vol. 76.

Miss Norton testified that during the night of December nineteenth she was occupied in making out lists of charitable institutions; that she made different lists until she got one pretty straight, and in the morning of the twentieth gave it to Mrs. Fogg, and that Mr. Fosdick came there about nine o'clock. Being asked as to this list the direct question whether Mrs. Fogg gave it to Mr. Fosdick, she answered as follows: " She gave it to Mr. Fosdick, *I believe; I can't be sure about it.*" And she testified that Mr. Fosdick gave the paper back to her and told her to take care of it, and that it remained in her possession up to Sunday, the day of the execution of the codicil, and that she afterwards burned it, having copied the names onto another paper which she marked " original," and which was offered in evidence as Exhibit 3.

The only evidence that could be construed into a statement by either witness that the paper had been handed by Mrs. Fogg to Mr. Fosdick is found in one question and answer in the testimony of Miss Norton : " Q. That is a list and it is a correct copy of the one you handed Mrs. Fogg and which she gave Mr. Fosdick ? A. It is a correct copy." Nowhere in the testimony is there any clear or definite statement on the part of either Mr. Fosdick or Miss Norton of a delivery of the list of beneficiaries by Mrs. Fogg to Mr. Fosdick, nor does it clearly appear that such delivery was made by any one else, either with the letter or at any other time.

Whether the trust, therefore, was ever completed or not is a question of considerable doubt. But upon the testimony we would not perhaps be called upon to interfere with the conclusion reached by the trial judge, were it not for other considerations which we think justify a new trial.

The granting of a new trial is a matter resting in the sound discretion of the court, which should be exercised whenever justice requires it; and we think that such an instance is presented in this case, not resulting so much from any error in any ruling or conclusion reached by the trial judge, but from the conduct of the parties and the way in which the questions were presented and tried before the court. As already stated, all the parties, except the defendant Fosdick, who set up this trust, including the residuary legatees, proceeded upon the theory that the stock should be transferred by Mr. Fosdick, to whom it had been assigned under an

uncompleted trust, for distribution under the terms of the codicil; and the good faith of the residuary legatees, who are directly affected and interested in the judgment appealed from, rested upon the notion that this would be the disposition made, and they did not put in any answer.

The importance of the inquiry as to the delivery of the list of beneficiaries does not seem to have been sufficiently impressed upon counsel at the trial, although it does appear that both endeavored to elicit testimony upon the question; but as shown by the condition of the record, from which quotations have been made, the whole subject was left in a hazy, doubtful and uncertain state. This doubt and uncertainty, in a matter of so much moment and involving so much money, we think should be cleared up by a new trial.

It is with less reluctance that we reach this conclusion, because there should be a modification of the judgment in respect to allowing, in addition to the $100,000, the dividends which were declared upon the stock to those held to be entitled to share as beneficiaries.

In the letter, the beneficiaries were to receive $100,000, and in addition thereto they might be entitled to interest. It would seem, both from the terms of the letter and of the codicil, which speaks of giving $100,000 out of the proceeds of sale of the stock, that it was worth more. There is no intention expressed, however, of giving such beneficiaries more than the $100,000. It appears that large dividends were paid upon this stock, and it is clear that the dividends would follow the stock. The certificate would become the property of the trustee, who was directed to sell the same, and out of the proceeds of sale to divide $100,000. This amount, with the possible exception of interest thereon, is all that we think the beneficiaries were entitled to. The value of this stock, over and above the $100,000 and interest, we think should have gone to the executors to be distributed under the terms of the will.

Upon the whole case, therefore, we think that justice requires that an opportunity should be afforded to the residuary legatees to interpose an answer, when, with all the parties before the court, and with the issue clearly defined, it can be clearly and definitely determined whether or not Mrs. Fogg delivered the list upon which appeared the names of the beneficiaries.

Our conclusion is that the judgment should be reversed and there should be a new trial, without costs to any of the parties upon this appeal.

FOLLETT, J., concurred.

VAN BRUNT, P. J.:

I concur upon the ground that there was no sufficient evidence to show that the list of beneficiaries was ever delivered to Mr. Fosdick by Mrs. Fogg or at her request.

Judgment reversed and new trial ordered, without costs to any of the parties upon this appeal.