WILLIAM T. LONG, Appellant, v. WILLIAM LONG, Respondent.

142    545<br>f164    541

Aside from the statute providing for the sale of real estate of which a person died seized, for the payment of his debts, there is no general power in the court to direct a sale for that purpose, or to direct the proceeds of a sale made by order of the court for other purposes to be applied in such payment.

When resort to the real estate of a decedent for the payment of his debts is sought by his creditors, the prescribed statutory proceedings must be strictly pursued.

*It seems*, that when real estate devised or descended is sought to be charged with the debts of the deceased, the validity and existence of the debt is open to contest by the devisees or heirs; they are not concluded by a

decree of the surrogate on the accounting of the personal representatives, and except in case of a judgment on the merits, such a decree is not even *prima facie* evidence against them.

The provisions of the Code of Civil Procedure (§ 2606) in reference to an accounting by an executor, or administrator of a deceased executor, administrator or testamentary trustee, as to the trust property, do not apply to a special guardian appointed in proceedings for the sale of the real estate of infants.

The surrogate has no jurisdiction of proceedings to require such a special guardian to account, but the power lies in the court from which he derived his appointment.

While it may be, as a general rule, that a surety upon the official bond of a special guardian, appointed to sell the real estate of an infant, is not liable until the remedies against his principal are exhausted and the extent of the liability ascertained by an accounting, when it appears that an accounting cannot possibly change the facts upon which the liability of the surety depends, the infant will not be compelled to resort to it before bringing suit upon the bond.

A special guardian appointed to sell certain real estate devised to two infants, subject to a legacy, executed a bond to each infant for the faithful performance of his trust. Defendant was one of the sureties on one of the bonds. The guardian sold the real estate and paid the legacy from the proceeds. Defendant had presented a claim against the estate, which was disputed and referred under the statute, and he had recovered judgment thereon. The special guardian, without any order or direction of the court, paid over to defendant the balance of the purchase money to apply upon this judgment. Said guardian never rendered any account to the court of his proceedings and was never discharged from the trust. He died intestate, as did also the other surety. The estates of both were administered and distributed. Defendant was a son of the decedent and was the devisee of the residuary real estate of the latter, of which there was a large amount. In an action upon said bond, *held,* that the payment so made by the special guardian was unlawful, in violation of his trust, and a breach of the condition of the bond for which the surety was liable; that defendant's judgment was not a lien upon the lands devised to the infants, and was enforcible only in the regular course of administration; that if the personalty was insufficient to pay the debts, after it was exhausted, the residuary real estate was primarily chargeable, and in the absence of proof or findings showing beyond question that some definite sum of money necessary for the payment of the debts must necessarily become in the end a charge upon the lands devised to the infants, there was no equitable ground for a defense or basis for an allowance to defendant.

Also *held,* that under the circumstances, an accounting in the court having jurisdiction of the guardianship was not necessary before bringing suit on the bond.

After the infants became of age they made an indorsement upon the account rendered to the surrogate by their general guardian, in which they expressed themselves satisfied therewith. In said account there was no reference to the fund in question here, and no part of it ever came to the hands of the general guardian. *Held,* that this was not a ratification of the disposition made of said fund; also, that the fact that the infants were represented by special guardian in proceedings for the settlement of the accounts of the administrator of the estate of the special guardian, appointed for the sale of the real estate, did not ratify the misappropriation, it not appearing that said accounts referred to or contained any information as to the disposition made of the purchase money.

The ratification of an unauthorized act to be binding must be by a competent person, with knowledge of all the facts, and of their legal bearing upon his rights.

*Long* v. *Long* (65 Hun, 595), reversed.

(Argued April 24, 1894; decided June 5, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made January 18, 1893, which reversed a judgment in favor of plaintiff entered upon the report of a referee and granted a new trial.

This action was brought upon a bond given by Duncan MacIntyre, as special guardian for the plaintiff, then an infant, in proceedings instituted in the Supreme Court for the sale of plaintiff's real estate, such bond being executed by MacIntyre as principal, and William Long, defendant, and George W. Root as sureties.

The facts, so far as material, are stated in the opinion.

*J. B. Adams* for appellant. As the record does not show that the reversal by the General Term was made upon questions of fact, this court has only to inquire whether there was any error of law in the judgment so entered, upon the facts found by the referee. (*Davis* v. *Leopold,* 87 N. Y. 620; *Weyer* v. *Beach,* 79 id. 409; *R. L. R. Co.* v. *Roach,* 97 id. 378; *Peck* v. *Goodberlette,* 109 id. 180; Code Civ. Pro. § 1338; *Thompson* v. *Bank of B. N. A.,* 82 N. Y. 7; *Douglass* v. *Ferris,* 138 id. 192.) The General Term erred as to each and

every assumption of fact outside the referee's report, and the conclusion of law based upon such assumptions was necessarily erroneous. (*Hogan* v. *Kavanaugh,* 138 N. Y. 417; *O'Flynn* v. *Powers,* 136 id. 412; *Kingsland* v. *Murray,* 133 id. 170; *Stillwell* v. *Swarthout,* 81 id. 109; *Selover* v. *Coe,* 63 id. 438; 2 R. S. 100, § 1; *Clark* v. *Sheldon,* 134 N. Y. 333; *In re McClure,* 135 id. 238; *Harris* v. *Ely,* 7 Paige, 421.) The special guardian and his surety can justify the guardian's disposition of the proceeds of the sale only when made as directed by an order of the court, and such an order is authorized by the statute only when made so as to secure such proceeds for the benefit of the infants. (2 R. S. 191, § 179; *Hunt* v. *Hunt,* 58 N. Y. 666; *Ellwood* v. *Northrup,* 106 id. 172.) The judgment directed by the referee was warranted by the facts found, and was in accordance with law, and the defendant's exception to the referee's conclusion of law was not well taken. (*Smith* v. *Holmes,* 19 N. Y. 271; *Nanz* v. *Oakley,* 122 id. 631; *Douglass* v. *Ferris,* 138 id. 192, 204; *Rima* v. *R. I. Works,* 120 id. 433.) The necessity for an order or adjudication by the court upon the guardian's account continued in any case only during the disability of infancy of the party for whose benefit and protection the bond was taken. (*Foreman* v. *Marsh,* 11 N. Y. 544, 552; *Brown* v. *Snell,* 57 id. 286.) There was no request or exception to refusal to find, as a conclusion either of law or of fact, that the plaintiff had ever ratified or confirmed the misappropriation or conversion of the trust funds by his special guardian; and, therefore, there is no question whatever of ratification or confirmation before this court on this appeal. (*Adams* v. *Brimmer,* 74 N. Y. 553; *Glenn* v. *Garth,* 133 id. 18; *Hamlin* v. *Sears,* 82 id. 331; *Jackson* v. *Burchin,* 14 Johns. 124; *Jackson* v. *Carpenter,* 11 id. 539.)

*John B. Abbott* for respondent. This court should uphold the findings of fact and determination of equities made by the General Term of the Supreme Court. (*Martine* v. *Lowenstein,* 68 N. Y. 456.) Plaintiff's complaint does not allege facts sufficient to constitute a cause of action against this

defendant. (*Perkins* v. *Strinnel*, 114 N. Y. 359; Code Civ. Pro. § 2606.) If the court shall find as fact that the moneys received by said special guardian in said proceedings were the same moneys paid defendant to satisfy the incumbrances upon the land of the plaintiff and his sister, to wit, the judgment and legacies set out in the petition and report of the referee in the proceeding, such disposition of the funds was not only lawful and proper, but said plaintiffs severally have ratified and confirmed such judgment. (*Loder* v. *Hatfield*, 71 N. Y. 92; *Bushnell* v. *Carpenter*, 92 id. 270.)

O'Brien, J. The General Term has reversed the judgment entered upon the report of the referee in favor of the plaintiff in this case. It does not appear that the reversal was upon the facts, and we must, therefore, assume that the decision was upon the law, applied to the facts settled by the report of the referee. The judgment was based upon facts as to which there was really no controversy. In December, 1866, Holloway Long, the plaintiff's grandfather, died, leaving a will which was duly admitted to probate. He devised to the plaintiff and his sister, children of his deceased son, as tenants in common, the undivided one-half part of a farm containing 328 acres, of which he died seized. In the month of February, 1868, the plaintiff and his sister, being infants, by their general guardian, presented a petition to the Supreme Court for authority to sell this real estate. An order was entered in the proceeding appointing the general guardian special guardian for the purpose of selling the land, and their interest in it, upon his executing a bond to each of the infants in the penalty of $5,000, conditioned for the faithful performance by the special guardian of his trust, and for compliance with the orders of the court in respect to the proceeds of the sale. On the 22d of February, 1868, the special guardian with the defendant and another person, now deceased, executed the bond in the form and manner prescribed by the order and the rules of the court. It was approved by the county judge and filed, and thereupon the guardian entered upon the per-

formance of his duties as such.   Subsequently the guardian, by direction of the court, conveyed the infants' interest in the land to a purchaser.   The following are the words of the condition in the bond : " The condition of this obligation is such, that if the above-bounden Duncan MacIntyre shall faithfully perform the trust reposed in him as the guardian of the above-named infant for the purpose of selling and disposing of certain real estate belonging to said infant, and shall pay over, invest and account for all moneys, and securities received by him as such guardian as aforesaid, according to the order of any court having authority to give directions in the premises, and shall observe and obey all orders and directions of any such court in relation to the said trust, then this obligation to be void, otherwise to remain in full force and virtue."

The purchaser paid to the special guardian as the consideration for the conveyance to him of the interest of both children in the real estate the sum of $9,150.   The interest of the infants was subject to a legacy of $4,000 bequeathed by the testator to his widow.   The guardian paid this from the proceeds of the sale, and no question is made as to the validity or propriety of this payment.   The defendant was a son of the testator, and was named in the will as sole executor, but he renounced the office and subsequently administrators with the will annexed were appointed.   He then filed with them, as such, a claim against his father's estate, which was disputed and referred as a disputed claim under the statute.   The referee reported in favor of the claim and judgment was entered upon the report in favor of the claimant for $10,245 on the 14th of December, 1867.   There is some dispute as to the regularity of this judgment, it being claimed on the part of the plaintiff that it was entered without confirmation of the report by the court or any other direction save the report of the referee appointed by the surrogate.   We will assume, however, that the judgment was not void and that the defects or irregularities in the record, if any, are not now material.   The special guardian paid the balance of the purchase money received by him for the interest of the infants

in the real estate devised to them by the will to the defendant upon this judgment, without any order or direction of the court, and this was found by the learned referee to be a misappropriation by the guardian of the funds, for which his sureties are responsible. The guardian never rendered any account to the court of his proceedings, and was never regularly discharged from the obligations of his trust. He died intestate in 1871 and his estate was administered and distributed in the year 1875. The other surety died in the year 1881, intestate, and his estate has also been administered and distributed. Prior to the commencement of this action the court, upon the plaintiff's petition, directed that the bond be prosecuted. The referee directed a judgment for the plaintiff for the amount of the penalty specified in the bond. The opinion of the learned General Term indicates that the reversal proceeded upon the theory that though the payment of the fund to the defendant was irregular and in violation of the rules of the court, yet the infants had the benefit of the payment, since it went to extinguish a claim or lien against their property, and hence the plaintiff was not equitably entitled to recover. It is plain from the discussion that it was assumed the court could have ordered the guardian to pay the money in his hands upon the judgment and that such an order would have been made had he applied for it, and that as there was nothing wanting to complete the authority to dispose of the fund in that way except such an order, equity would now regard as done that which would have been done had an application for that purpose been made. The conclusion of the learned court below depends upon two propositions in neither of which can we concur : (1) That the court would or could have authorized the guardian to pay the money on the judgment. (2) That the infants received the benefit of such payment. The court had no power to direct the fund in the guardian's hands to be applied to a purpose for which it could not direct the land to be sold in the first instance. The judgment was not a lien upon the land. It was not a judgment against the testator in his lifetime nor against his devisees, but against the adminis-

trators of his estate. It could have been enforced only in the regular course of administration. The personal property was the primary fund for its payment, and the real estate of which the testator died seized, in the hands of his heirs or devisees, was not liable to be sold for the payment of the debt until the personal estate had been exhausted, and not then without complying with the statutory proceedings for that purpose in the Surrogate's Court. Aside from the statute there was no general power in the court to direct the lands of which the testator died seized, or the proceeds in the hands of the guardian, to be applied to the payment of debts. (*Hogan* v. *Kavanaugh*, 138 N. Y. 417; *O'Flynn* v. *Powers*, 136 id. 412; *Kingsland* v. *Murray*, 133 id. 170.) The judgment, whether valid or not, added nothing to the force of the claim as a charge upon lands. The most that could be claimed for it is that it was *prima facie* evidence of a debt. When real estate devised or descended is sought to be charged with the debts of the deceased, the validity and existence of the debts are open to contest by the heirs or devisees in the proceeding, and the decree of the surrogate on the accounting does not conclude them, and except in the case of a judgment on the merits, is not even *prima facie* evidence of the existence of the debt. (*O'Flynn* v. *Powers*, *supra*.) The personal estate must first be accounted for and applied; the other lands devised are also equally chargeable; the Statute of Limitations or any other legal defense to the claims is available to the heirs or devisees and the land cannot be sold or its proceeds applied until a valid debt is established in the proceeding. These familiar rules make it impossible to say with any degree of certainty that the judgment or claim upon which the fund in question was applied, or any specific part of it, could ever have been charged upon the land in such a way as to authorize a sale. The residuary real estate, which seems to have been large, was devised to the defendant. That was chargeable with the debts of the deceased after the personal estate had been exhausted and in the regular course of administration. The liability of the interest of the infants in

the land devised to them to be sold for the satisfaction of the
debts of the deceased, was subject to so many conditions and
depended upon so many contingencies that, when invoked as
a justification for the disposition made of the fund arising
from the sale it seems to me to be entirely unsafe and
unreliable.   In the absence of proof or finding showing beyond
all question that some definite sum of money necessary for the
payment of the debts of the testator, must necessarily become
in the end a charge upon the lands devised to the plaintiff and
his sister there was no equitable basis for disturbing the con-
clusion of the learned referee.   I am unable to see how such
proof was possible in this case or how it can be made in any
case resting upon the same or similar facts, and hence the
necessity of the rule which requires the creditors of a
deceased person to pursue strictly the statutory proceedings
whenever resort must be had to the real estate for the pay-
ment of debts.   The general rule is that the sureties upon
official bonds of this character are not liable until the remedies
against the principal have been exhausted and the extent of
the liability ascertained by an accounting in the proper court.
The provisions of § 2606 of the Code do not seem to apply
to a special guardian for the sale of the real estate of
infants.   The Surrogate's Court has no jurisdiction of such
a proceeding, and the guardian should be required to
account before the court from which he derived his
appointment.   In this case the guardian could have been
required to account to the Supreme Court.   Whenever a
statute requires an accounting by the principal, or his personal
representatives, as a preliminary condition to the maintenance
of an action upon the official bond, it must, of course, be com-
plied with.   But no statute is cited which in terms applies to
this case.   The application is by way of analogy.   In an action
upon the bond of a special guardian for the sale of real estate,
special circumstances may appear which would render such
an accounting wholly unnecessary, and then it may be dis-
pensed with.   When it can be seen that an accounting cannot
possibly change the facts upon which the liability of the

sureties depend, the infant should not be compelled to resort to a proceeding which is practically useless. In this case no accounting could make a single material fact any clearer than it now is. The guardian received the money and paid it over to the defendant. He died intestate more than twenty years before the commencement of this action. His estate derived no benefit from the misappropriation. It was administered and distributed more than fifteen years before. If the guardian and the other surety were still alive, in an action upon the bond, the whole liability in equity would, as between themselves, fall upon the defendant, for the reason that he received the money, and the misconduct of the guardian was for his benefit. In view of these special circumstances, I think the learned referee was right in holding that an accounting in the court having jurisdiction of the guardianship was not necessary, since the extent of the liability of the sureties upon the bond had been otherwise as definitely determined as it could be by an accounting. (*Girvin* v. *Hickman*, 21 Hun, 316; *Brown* v. *Snell*, 57 N. Y. 286.) It appears that after the infants became of age they made an indorsement upon the account rendered to the surrogate by their mother, as their general guardian, in which they expressed themselves satisfied with the account. It is urged that such action on their part ratified what had been done with the fund arising from the sale of the real estate. There is no ground for this contention. The account of the general guardian contained no reference to the fund in question. No part of it ever came to her hands, and of course her accounts could not embrace it, and the surrogate had no jurisdiction over it. The infants, before coming of age, were represented by special guardian in proceedings before the surrogate for the settlement of the accounts of the administrators of Holloway Long, and in like proceedings for the settlement of the accounts of the administrators of the special guardian for the sale of the real estate. Their presence upon the record as parties to these proceedings could not ratify the misappropriation. Aside from the fact that they were then incapable of ratifying, it does not appear that these

accounts could or did inform them of the disposition made of the money from the land. The ratification of an unauthorized act must be by some competent person, with knowledge of all the facts and of their legal bearing upon his rights.

The judgment of the General Term should be reversed and that entered upon the report of the referee affirmed, with costs.

All concur.

Judgment accordingly.