In the Matter of the Application to Mortgage, Lease or Sell the Real Estate of ROSELL H. MEAGLEY, Deceased, for the Payment of his Debts.

CITY NATIONAL BANK OF BINGHAMTON, N. Y., and Others, Appellants; ANNA E. CORBY and Others, Respondents.

*Sale of real estate for the payment of a decedent's debts — it must be shown in support thereof that the assets when duly administered would not pay the debt — irregularities in the administration must be shown not to have been prejudicial.*

In proceedings to compel a sale of the real estate of a testator for the payment of his debts, it appeared that by his will he devised and bequeathed all of his estate to his widow, who was named as the executrix thereof and duly qualified as such; that she, supposing his estate to be more than sufficient for the payment of his debts, instead of proceeding in the due course of administration, treated it as her own and took his place as a partner in three of five firms of which the testator had been a member. These new firms satisfied most of the debts of the old ones, either by giving new notes or with the proceeds thereof,. the executrix paying a large amount of the testator's individual debts and turning a large part of the proceeds of the personal property into the new firms, which, as well as their members, including the executrix, were subsequently found to be insolvent.

*Held,* that the law pointed out to the executrix the proper course to be pursued, which, if followed, would have amounted to due administration, and that,. when she departed from it and pursued a different course, she took the risk of failure, and that the burden rested upon her to show that the administration

which she substituted for that prescribed by law had resulted as favorably to all parties interested as if she had made due administration;

That, to sustain this proceeding to compel the sale of the decedent's real estate, it was necessary that the executrix show the extent of the testator's actual indebtedness upon his firm liabilities, and that, having volunteered to pay the partnership debts, she was obligated to establish the fact that proceedings against the surviving partners would have been fruitless;

That payments of money made by her to take up mortgages upon real estate devised to her by her husband and in improving the same, and the use of other money for individual purposes, could not be regarded as payments made in the course of the due administration of the estate;

That, in the proceedings for the sale of the real estate, the executrix should be charged with what she had misapplied and should be directed to apply the same to the payment of the debts as so much money in her hands, and that, if the insufficiency still existed, then a sale of the real estate to the extent of such deficiency should be decreed.

*Quære*, whether in any case a sale of real property can be decreed to replace personalty squandered by an executrix.

PUTNAM, J., dissented.

APPEAL by the City National Bank of Binghamton, N. Y., and others from a decree of the Surrogate's Court of Broome county, entered in said Surrogate's Court on the 7th day of March, 1898, directing a sale of certain real estate belonging to the decedent for the payment of his debts, with notice of an intention to bring up for review upon such appeal an intermediate order entered in said Surrogate's Court on the 22d day of February, 1893, directing that a citation issue to certain persons therein named requiring them to show cause why a decree should not be made for the disposition of the real property of said decedent for the payment of his debts; also an intermediate order, entered in said Surrogate's Court on the 3d day of May, 1893, directing that a supplemental citation issue; also an intermediate order, entered in said Surrogate's Court on the 23d day of July, 1896, as modified by an order of October 26, 1896, directing the opening of the decision of the court theretofore made and filed, and that a supplemental citation issue to certain persons therein named.

Rosell H. Meagley died January 20, 1890, leaving a last will and testament in which he devised and bequeathed all his estate to his widow, Julia L. Meagley, who was therein named as executrix. The will was duly proved, and letters testamentary issued to said Julia L. Meagley, February 3, 1890.

This proceeding was instituted by Anna E. Corby upon a claim for $8,200, based upon a note dated November 25, 1887, made by the firm of Ira J. Meagley & Co., of which the testator was then and at his death a member. The note was given for $8,200 lent by the petitioner to said firm ; it was made to the order of the testator, indorsed by him, and payable with interest five years from date. The testator, at the time of his death, was a partner in four other copartnership firms. He left an estate real and personal, which his widow, the executrix, supposed to be much more than ample for the payment of his debts. Instead of proceeding in the due course of administration, she treated the estate and the testator's debts as her own. She took his place as partner in three of the five firms, and the new firms satisfied most of the debts of the old firms either by their new notes or the proceeds thereof. She paid a large part of the testator's individual debts, and turned a large part of the proceeds of the personal property into the new firms, and finally ascertained that the firms, their members and herself, were insolvent. Other facts are stated in the opinion.

*Stephen C. Millard, H. D. Hinman* and *George Whitney*, for the appellants.

*D. H. Carver* and *Roger P. Clark*, for the respondents.

LANDON, J. :

The petitioner, Anna E. Corby, established her claim of $8,200 against the estate of the testator. The appellants, the First National Bank of Binghamton, and the City National Bank of Binghamton, have derived title from the executrix, his sole devisee, to certain of the real estate of the testator, which the surrogate has directed to be sold for the payment of his debts. They challenge the decree under section 2759 of the Code of Civil Procedure, on the ground, among others, that although the surrogate found that all of the personal property of the testator which could have been applied to the payment of his debts and funeral expenses had not been so applied, yet the executrix had nevertheless " proceeded with reasonable diligence in converting the personal property into money and applying it to the payment of the decedent's debts and funeral expenses; and that it was insufficient for the payment of the same." He thus found in the language of the latter alternative of subdivision 5 of

section 2759 of the Code. The appeal is taken upon the facts as well as the law, and we, therefore, have the same power to decide the questions of fact which the surrogate had — section 2586. The main question is whether this finding is true; that is, whether the personal property of the testator proved to be insufficient for the payment of his debts, upon proof of the due administration thereof.

The testator, as found by the surrogate, left personal property to the amount of $51,401.90; his individual debts were $8,000. He was, however, a partner in five different firms, and the executrix, his widow, was his sole legatee and devisee. Supposing his estate to be ample and the firms prosperous, she did not file an inventory of his personal property, or proceed in the due course of administration to settle his estate. She took his place as partner in three of these firms. These several firms were in fact insolvent at the time of the testator's death, and the surviving partners were severally insolvent, but whether this insolvency was total at the time of the testator's death was not made to appear as to all of them. The surrogate finds that no accounting is shown to have been made or balance struck of the copartnership business of any of these firms between the surviving partners and the executrix. He finds that the aggregate indebtedness of these several firms at the time of the testator's death was $58,731.57 over and above their respective assets and the financial ability of the surviving partners to pay; but it appears that no proceedings were taken to collect anything from any of such surviving partners. Adding $8,000, his individual debts, makes a total indebtedness of $66,731.57.

The surrogate finds that the executrix paid out of the assets of the estate $6,000 in full of some of the testator's individual debts, other than upon firm notes indorsed by him, $12,000 in full upon notes made by one of these firms and indorsed by the testator, with full knowledge of the petitioner's claim. That she paid out of said assets $2,750 upon mortgages upon the real estate; $3,500 more for improving the real estate; used and applied "several thousand dollars" of the assets in carrying on her individual business and for her individual purposes. The debts proved in this proceeding amounted to $12,613.96, besides interest thereon. It thus appears that out of a total indebtedness of $66,751.67, thus computed, $54,117.61 has been paid or satisfied. The appellants challenge the accuracy of this

method of computation. With the exceptions above specified, most of the debts were satisfied by the executrix becoming a member of three of the firms in which the testator had been a partner, and then the new firms took up the notes of the old firms mainly by new notes or by the proceeds of new notes. Most of these debts were upon notes given by the several firms and indorsed by the testator. The executrix, in order to carry on the business of the new firms, treated the personal assets of the testator's estate as her own, and used a large part thereof in supporting such business and in paying the notes of the new firms given to retire the notes of the old firms.

If the debts of the old firms thus satisfied or retired are excluded from the debts of the testator, then the personal property applicable to the payment of his debts was more than ample for the purpose. The learned surrogate bases his finding of fact that the executrix " proceeded with reasonable diligence in converting the personal property into money and applying it to the payment" of the testator's debts, upon the assumption that, under all the circumstances, the course she pursued was justified by the apparent condition of the testator's estate, and the apparent prosperity of the three firms in which she took his place. She was the sole devisee and legatee, and supposed she was able to pay all debts, and still be rich.

The surrogate's view can be upheld only to the extent that it is clearly shown that the administration adopted was equally as favorable to the parties interested as due administration would have been. The law pointed out to the executrix the course to be pursued, and such course, if properly pursued, would have amounted to " due administration." When she departed from it and pursued a different course, she took the risk of failure, and the burden rests upon her to show that the administration which she substituted for that prescribed by law has resulted equally as favorably to all parties interested as if she had made due administration ; and only to the extent that that is shown can its results be accepted. This burden she has not met. If we assume that the debts of the firms were the debts of the testator, and that the manner of their retirement amounted to the same appropriation of the personal assets of the estate as if the executrix had directly paid them, the fact, nevertheless, is that she paid some in full and others not at all ; she paid first without ascertaining whether she ought to pay anything, or if some-

thing, how much, and the evidence does not show that she did not pay more than the due administration of the estate would have shown to be necessary. She did not call the survivors of the firms of which her husband was a member to any account at any time whatever. The learned surrogate bases his findings of the condition of such firms at the date of her husband's death mainly upon the testimony of the several alleged insolvent survivors — testimony affected to some extent by the condition of such firms and of the survivors' own pecuniary standing, after an unsuccessful continuance of the business with the executrix as a partner.

Ought the executrix to have paid or assumed the payment of so large a sum upon account of the just contribution which the estate ought to have made in winding up the partnership businesses as of the date of the testator's death? We do not know, and, therefore, the finding of the surrogate, that the personal property left by the testator was insufficient for the payment of his debts, is not warranted by the evidence, especially in view of the fact that so large a part of the testator's indebtedness is computed upon the basis of his liability for all the debts of the firms of which he was a member, over and above the assets of such firms. It does not follow that, because the surviving members were insolvent, nothing could be recovered from them. It is true that a partnership creditor, when he can prove his inability to collect of the surviving partners, may proceed against the estate of the deceased member without bringing an action against the survivors. (*Pope* v. *Cole*, 55 N. Y. 124; *Van Riper* v. *Poppenhausen*, 43 id. 68; *Beardslee* v. *Hemingway*, 65 Hun, 400.) The reasoning upon which the cases rest is that upon the death of one partner, his estate is discharged in law, but remains liable in equity, and in equity it must be shown that no remedy at law exists. Hence, if the creditor can collect part of his claim at law against the survivor, he must do so before resort to equity against the estate. The surviving partners were primarily and legally liable for such debts, and they provided for them after the executrix became partner with them in the new firms. There was no absolute or certain debt due either in law or equity from the testator's estate at the time they paid or novated them. (*Hoyt* v. *Bonnett*, 50 N. Y. 538.) The testator's liability in his lifetime was contingent. As indorser he promised, if protested, to pay if the

firm should not.   As a member of the firm he promised to pay if the firm could not.   Neither contingency occurred with respect to the novated debts.   When the executrix of the deceased partner volunteers to pay the partnership debts, she should clearly show that proceedings against the survivors would not have resulted in collecting anything.

The money paid by the executrix to take up mortgages upon the real estate devised to herself and in improving the same and the "several thousand dollars" which she used for "individual purposes," cannot be upheld as due administration.

The learned surrogate, in effect, held that the executrix released the assets from liability to the extent that she diverted them in turning them over to the new firms, and thus did not improperly administer. As the executrix is chargeable with the whole personal assets of the testator, applicable to the payment of debts, so she should be credited in reduction of such assets with a just proportion of the testator's debts which she has paid or satisfied individually, which debts, if she had not satisfied them, would be establishable by the decree of the surrogate in the proceeding to sell the real estate ; such proportion, in case of an insufficiency of assets to pay all the debts, being at the rate which the aggregate of all the debts bears to the aggregate of all the assets applicable thereto, if due administration had been pursued.

There was no due administration.   But courts are to administer the law in the spirit of justice ; and in view of the honest, though mistaken, efforts of the executrix to take all of the testator's debts upon herself and pay them by the methods adopted by her, we think the surrogate was justifiable in trying to find out to what extent her methods were equivalent in result to those of due administration, and to give her and the petitioner the benefit of such equivalent results.   He could treat such debts as the testator's debts only to the extent that the insolvency of such firms and of their surviving members in equity made them the debts of the testator.   Under the circumstances, equity requires that the executrix should be relieved from the legal consequences of her mistake in attempting to provide for them in her firm and individual capacity, and that she be restored to the same position as if the payments she thus made she made as executrix.   Nothing, however, can be presumed in her favor.   The

·credits she does not clearly show herself entitled to cannot be allowed her.

The error of the surrogate is in not holding her to strictness of proof in showing the extent of the testator's actual indebtedness upon his firm liabilities. There is reason to believe that his findings do not rest upon the condition of such firms and their surviving members at the date of the testator's death, but upon the subsequent worse condition of the firms and the members of the firms which replaced them.

The appellants contend that the executrix is to be charged with the $51,401.90 of personal property available for the payment of debts, and that the debts to be considered are only those " established by the decree," namely, $12,613.96. The question before the surrogate was whether, due administration being had of all the personal property of the testator which could have been applied to the payment of his debts, it was insufficient for the payment of the same " as established by the decree." Only the debts established by the decree are to be considered as needing payment, but in computing the assets properly applicable thereto, it is plain that, to the extent that they have already been properly applied to the payment of the testator's other debts, the executrix should not be charged therewith in this proceeding. But this does not help the petitioner here for the reasons already stated.

The petitioner relies upon *Matter of Bingham* (127 N. Y. 296) to support two propositions: (1) That the question of reasonable diligence is dependent upon the circumstances; (2) that the petitioner is not to be denied recourse to the real estate for the payment of her debt, even if the executrix has squandered the personal property. The first proposition we have already conceded. With respect to the second, the court did, indeed, practically so hold in a very peculiar case. But this proceeding is statutory, and the statute (Code Civ. Proc. § 2759) specifies the conditions upon which, only, the real estate can be sold for the payment of debts, and the conditions are the same whether the executor or administrator applies, or a creditor. The cases hold that the conditions prescribed by the statute must be strictly pursued. (*Kingsland* v. *Murray*, 133 N. Y. 170, 177; *Long* v. *Long*, 142 id. 545; *Hogan* v. *Kavanaugh*, 138 id. 417, 422; *Moser* v. *Cochrane*, 107 id. 35, 39.) We

have conceded above that a substantial compliance which reaches the same result as a strict compliance may be held to be sufficient, the burden, however, resting upon the executrix to prove it. In *Kingsland* v. *Murray* the court said (p. 175): "If they (the executors) waste or squander the personal property so that it becomes insufficient for the payment of the debts, the only resort of the creditors is to them to enforce their personal responsibility, and they cannot in that case cause the real estate to be sold under the statutes referred to." For the purposes of this proceeding, when instituted by a creditor, it would, no doubt, be right to charge the executrix with what she has misapplied, and to direct its application by her to the payment of the debts as so much money still in her hands (*Matter of Georgi*, 21 Misc. Rep. 419, 423), and if an insufficiency still exists, then to decree a sale of the real estate to the extent thereof.

There are other objections urged by the appellant. They are, if valid, but irregularities in practice, not involving the jurisdiction or merits.

The decree should be reversed upon the facts, with one bill of costs to the appellants against the petitioner.

All concurred, except PUTNAM, J., dissenting.

Decree of surrogate reversed and a new trial granted, with costs to abide the event.