(42 App. Div. 543.)

LUND v. SPENCER et al.

(Supreme Court, Appellate Division, Fourth Department.    July 18, 1899.)

HUSBAND AND WIFE—ALIENATION OF AFFECTION — KNOWLEDGE OF MARRIAGE —EVIDENCE.
      In an action by a wife against a mother and her daughter for alienation of her husband's affections, the mother testified that she did not know that the husband was married, though she did know of his attentions to her daughter.   It was shown that it was notorious in the town where defendants lived that he was a married man.   A detective testified that he called at defendants' house, and saw a person whom he presumed was the mother, and that he then stated to her that the husband was a married man.   The testimony was flatly contradicted by the mother, who says she never saw him.   The mother was a person who seldom mingled with her neighbors.   Held to authorize the court, in its discretion, to set aside a verdict against the mother, as contrary to the evidence as to her knowledge of the fact that her daughter's suitor was a married man.

Appeal from trial term, Monroe county.

Action by Jessie D. Lund against Anna B. Spencer and another. From an order setting aside a verdict against Anna B. Spencer, plaintiff appealed.   Affirmed.

The defendant Anna B. Spencer is the mother of the defendant Harriet Lund, and the plaintiff, who is the wife of one Charles J. Lund, brings this action to recover damages for the alienation by the defendants of her husband's affection.   The action was commenced on the 29th day of April, 1896. A separate defense was interposed by each of the defendants, and the issues thus joined were tried at the Monroe trial term, in February, 1897.   The jury rendered a verdict of $5,000 against the defendant Harriet Lund, and a separate verdict of $3,750 against her co-defendant.   A motion was thereupon made by the defendant Anna B. Spencer to set aside the verdict rendered against her. This motion was based upon all the grounds specified in section 999 of the Code of Civil· Procedure, and from the order granting the same this appeal is brought.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

John D. Lynn, for appellant.

George Raines, for respondent.

ADAMS, J. Our attention has been directed by the respondent's counsel to a number of exceptions taken during the progress of the trial to the admission of evidence, which, it is contended, furnished of themselves sufficient reason for the granting of the order appealed from; and this contention is strongly fortified by the citation of numerous authorities. It appears, however, that the learned trial justice rested his decision solely upon the ground that the verdict was against the weight of evidence, and, if he was justified in reaching that conclusion, it will be an unnecessary expenditure of time to review, or even consider, the case from any other standpoint. We shall, therefore, discuss the question thus presented, and, as preliminary thereto, it may be well to suggest that the granting or refusing of a new trial upon the minutes of the court is a matter which rests almost entirely in the discretion of the trial justice. Barrett v. Railroad Co., 45 N. Y. 632; Bliss v. Fosdick, 76 Hun, 508, 27 N. Y. Supp. 1053; Glassford v. Lewis, 82 Hun, 46, 31 N. Y. Supp. 162. This discretionary power is, doubtless, one which should always be exercised with great caution; but it is nevertheless one which, as was said in a recent case, "ought, perhaps, to be more often exercised by trial courts for the proper protection of the rights and interests of litigants" (Young v. Stone, 77 Hun, 395, 28 N. Y. Supp. 881), and it is one which, from the very nature of things, cannot be controlled in its exercise by definite rules. In one of the above citations (Barrett v. Railroad Co.) the principles which must govern in cases of this character were thus stated by Allen, J.:

"Motions to set aside verdicts as contrary to evidence, as well as motions for a new trial upon the ground of newly-discovered evidence, are not governed by any well-defined rules, but depend in a great degree upon the peculiar circumstances of each case. They are addressed to the sound discretion of the court, and whether they should be granted or refused involves the inquiry whether substantial justice has been done, the court having in view solely the attainment of that end."

If, then, we adopt the principles thus enunciated for our guide, it would seem to follow, as a logical corollary, that when, in the exercise of its discretionary power, an order has been made by the trial court setting aside a verdict as against the weight of evidence, its determination ought not to be reversed by an appellate tribunal unless it is made to appear beyond all cavil that great injustice has been done to the defeated party. Bannon v. McGrane, 45 N. Y. Super. Ct. 517. With a view, therefore, to determining whether or not there has been an abuse of discretion in the granting of the order appealed from, let us briefly review some of the facts of this case:

It appears that the plaintiff and Charles J. Lund were married in August, 1890, and that they lived happily together for some three years thereafter, when the husband formed the acquaintance of the defendant Harriet Spencer, and soon became enamored of her. Miss Spencer was a young woman of some personal attractions, who resided with her parents at Spencerport, a small hamlet near the

city of Rochester. Lund's infatuation for this woman grew apace, and was obviously reciprocated by her. After a time he found it convenient to visit her at her home in Spencerport, where he was cordially received and entertained by both Miss Spencer and her mother. His visits gradually became more frequent, and it was not an unusual thing for him to remain over night at the Spencer house, returning to Rochester in the morning. There is nothing in the evidence, however, to indicate that upon any of these occasions the relations between Lund and Miss Spencer partook of a criminal character; but he was evidently in love with her, and she with him, and it is conceded that during this entire time she was aware of the fact that he was a married man, and had a wife living in Rochester. Matters progressed so far that in August, 1894, Lund accompanied Miss Spencer and another young woman to a summer resort at a place called Glen Island, at Bay Quinte, near Picton, in Canada, where they remained for about a week, occupying a cottage by themselves. Shortly after learning of this occurrence the plaintiff brought an action against her husband for divorce upon statutory grounds, naming the defendant Harriet Spencer as co-respondent, and charging her husband with having committed adultery with Miss Spencer during their sojourn at Glen Island. No defense was interposed to the plaintiff's complaint in that action, and in February, 1895, a decree of absolute divorce was granted therein. In the month of June following, Lund and Miss Spencer went to Canada, where they went through some form of marriage, since which time they have continued to live together as husband and wife. From the time Lund first formed the acquaintance of Miss Spencer, his demeanor towards his wife changed quite perceptibly. He treated her with coolness, avoided her society as much as possible, and endeavored to get her to go to Europe, in order that he might be relieved of it entirely; in short, he virtually deserted her, and transferred his affections and attentions to the woman with whom he is now living. Upon the trial of this action he made a pusillanimous attempt to extenuate his cruel treatment of his wife by charging her with improper conduct, but these charges were obviously unfounded, and it was established beyond all controversy that his affections were alienated from his wife without good cause, and that the defendant Harriet Spencer was in a large measure responsible therefor. Consequently, as against her, a perfect cause of action was proven.

Our recital thus far of the leading facts in the history of this case, and our statement of the conclusion to which they unerringly point, are virtually unchallenged. But whether or not Mrs. Spencer participated in the wrong done to the plaintiff, and to what extent, if at all, she must share her daughter's responsibility, are questions which are not quite so free from embarrassment. That she was aware of Lund's admiration for her daughter is not disputed, as, indeed, it could not well be, under the circumstances. She says, however, that she did not for a long time regard him in the light of a suitor, although the diligence displayed by him in the prosecution of his suit was such as to leave little doubt as to his intentions in the minds of her friends and neighbors. Neither is it dis-

puted that the daughter's trip to Glen Island, with Lund for a companion and a young girl of some 18 years of age for a chaperon, was taken with the knowledge of her mother, if not with her consent. And while this circumstance indicates a laxity of maternal solicitude for a daughter's reputation which is quite incomprehensible to the average mind, it does not necessarily establish, or even tend to establish, the fact that the mother was aiding her daughter in an effort to alienate Lund's affections from his wife; for she might have known of his affection for, and even approved of his attentions to, her daughter, without being aware that he was a married man, and such she insists with much fervor was really the case. In the course of her examination during the trial she testified:

"It was either the last of April or the first of May, 1895, when I first learned that my daughter and Lund were considering the subject of matrimony. She told me in her room that she did not know but what she might marry Mr. Lund in the course of the summer. I said I thought she was foolish, and that there was another gentleman that I much preferred she would marry, and whom I long thought she would marry. * * * At that time I did not know that Mr. Lund was a married man. There was a time when I learned that he had been a married man. It was about three or four days before she was married. It was three or four days, I am not certain which, before she was married. My daughter told me that he had had an unfortunate marriage, but had a divorce. It was the 19th of June, 1895, when my daughter was married to Charles J. Lund, and it was three or four days prior to that time that I first learned that he was a married man. I never had the slightest intimation, previous to that time, that he was a married man. It never entered my head that he had ever been married."

These declarations seem at first blush almost incredible, in view of the fact that Lund's marriage was generally known and discussed among the inhabitants of Spencerport; but it appears that Mrs. Spencer was a person who confined herself closely to her household duties, and seldom mingled with her neighbors, which circumstance is relied upon to explain her ignorance of and indifference to village gossip. At all events, the case, if we except the testimony of a single witness, is destitute of any evidence, other than such as is purely inferential in its character, which directly contradicts her testimony; while, upon the other hand, she is corroborated by her daughter and other witnesses, as well as by the "speech of people," which characterizes her as a respectable, unobtrusive, and simple-minded woman. The witness to whom reference has just been made was a detective by the name of Parker, who testified that he was at Mrs. Spencer's house in August or September, 1894, in search of evidence; that he there saw a person whom he supposed to be Mrs. Spencer; and that in the course of conversation with her he stated that Lund had a wife living in Rochester. This witness was flatly contradicted by Mrs. Spencer, who testified that he was never at her house to her knowledge, and that she never saw him before he came upon the witness stand.

We do not think that, under these circumstances, the evidence of this single witness possessed sufficient probative force to raise such an issue of fact as deprived the trial justice of the right to exercise his discretionary power to set aside a verdict which, in his opin-

ion, was clearly against the weight of evidence. Transportation
Co. v. Hurd, 8 N. Y. St. Rep. 718; Durland v. Durland, 153 N. Y.
68, 47 N. E. 42. And while it is quite possible that another sit-
ting in his place might have deemed it impracticable to pursue the
course he did in the same circumstances, it must be borne in mind
that he saw the witnesses, noticed their demeanor while upon the
witness stand, and heard them testify. He was, consequently, much
more competent to judge accurately of the value and effect of their
testimony than are the members of a court of review; and it is
mainly by reason of this fact that the rule to which reference has
been made in the opening sentences of this opinion is so rigidly en-
forced. We see nothing in the case which takes it out of the opera-
tion of that rule, and consequently we conclude that the order ap-
pealed from should be affirmed.

Order affirmed, with costs. All concur.