BENEDICT et al. v. ARNOUX et al.

(Supreme Court, Appellate Division, First Department. June 19, 1896.)

POWER OF SALE—EXECUTION.

　　Testator devised real estate to his executors in trust, and gave them power, if at any time they should deem it for the best interests of the estate, to sell all or any part of the estate on such terms and in such manner as they should deem best. At the time of his death, testator was liable as indorser of notes made by one P. and another. Judgment was obtained. on the notes, and assigned to defendant, who commenced proceedings in the surrogate's court to compel the sale of testator's real estate for the payment of debts. While the proceeding was pending, one of the makers of the notes consulted with defendant, who was a lawyer, as to what could. be done in the matter. Defendant advised him that the trustees could not give a mortgage on the property, but that they had an unrestricted power to sell. About the same time the wife of P. conveyed to defendant certain property owned by her, as security for the judgment. Soon afterwards defendant wrote to one of the trustees that P. had made a proposition which he (defendant) was willing to carry out, and which would relieve the trust property from the lien of the judgment. The proposition was to convey the trust property to a third person, taking a mortgage from him for the price, and raise money on the mortgage, to be applied in improving the property conveyed by P.'s wife to defendant. The plan was carried out by conveying the property to a brother of defendant, but the trustees, by agreement, remained in possession of the premises. Held, that such conveyance was not a valid execution of the power of sale.

Appeal from special term, New York county.

Action by Elias C. Benedict and others, as executors of Edwin Booth, deceased, against George T. Arnoux and Joseph Campbell and others, executors of William Campbell, deceased, to foreclose a mortgage. There was a judgment in favor of plaintiffs, and defendant Campbell appeals. Reversed.

Argued before BARRETT, RUMSEY, WILLIAMS, and INGRAHAM, JJ.

Henry B. Johnson, for appellants.

C. N. Bovee, for respondents.

INGRAHAM, J. William Campbell died in the city of New York on the 27th day of April, 1888, the owner of two houses, numbered, respectively, 62 and 64 South Fifth avenue, New York City, leaving a last will and testament by which he gave to his executors all the residue of his estate, after making three legacies aggregating $4,000, "in trust, however, that they shall take possession of, manage, and control the same, and receive the rents, income, and profits therefrom, for and during the natural life of my wife, Sarah; and I instruct and direct that they shall, out of such rents, issues, and profits, during the life of my said wife, maintain and carry on my said household, and support my family as it now exists,"—and disposing of any income not necessary to carry out this provision during the life of his wife. The will further provides that, from and after the death of his wife, six-sevenths of his estate, real and personal, shall be divided among his six children; the remaining one-seventh being given to his executors in trust to apply the income thereof to the support and maintenance of his daughter Hannah. By the ninth clause of the will the executors were authorized to collect the rents, issues, and income of his estate; to sell and dispose of any bonds or stock, or other personal property; to reinvest the proceeds thereof; and to make and execute leases of his real estate for a term not exceeding three years. By the tenth clause of the will a power of sale is given to the trustees, in the following language:

"If at any time my executors * * * shall deem it for the best interest of my said estate that any part or parts, or all, of my real estate should be sold, then I authorize and empower my executors, as such, and the survivors and survivor of them, to sell and dispose of any real estate of which I may die seised or interested in, and any part or parts thereof, upon such terms and in such manner as they shall deem best."

No disposition was expressly made of the proceeds of this real estate, but they would clearly vest with the executors, as trustees, under the general trust contained in the fourth and subsequent clauses of the will, and, upon the death of the testator's wife, would be divided under the seventh and eighth clauses of the will. There can be no question but that there was here created a valid, express trust, by which the title of this real estate vested in the executors, as trustees, with a power of sale, by which they were authorized to sell the real estate if they should deem it for the best interest of the estate that it should be sold. It was unincumbered, and of the value of upwards of $60,000. Thus these defendants, trustees, were at the time of the transactions hereafter mentioned in actual

possession of this real estate, as the legal owners thereof, in trust, to carry out the provisions of the will, with a power of sale authorizing them to sell if they should deem it for the best interest of the estate. The testator left no personal property, but there were claims at the time of his death, against him, to an amount of about $40,000. Some of these claims were contested, and were upon the testator's indorsements or guaranties of promissory notes or obligations of his son and son-in-law, constituting the firm of Phyfe & Campbell. Upon one of these indorsements, which had been held by the Chemical National Bank, an action had been brought in the testator's lifetime, and a verdict had been rendered against the testator. Before the entry of judgment, however, the testator died, and judgment was entered August 9, 1888, for $12,317.78. Mr. William H. Arnoux had guarantied the payment of that note to the Chemical National Bank, and, subsequently to the entry of the judgment, had paid the Chemical National Bank, and taken an assignment of the judgment, and subsequently commenced proceedings in the surrogate's court to compel the sale of the real estate of Campbell, the testator, to satisfy that judgment; and that proceeding was pending at the time of the transactions hereafter mentioned. At this time he therefore stood in the position of a creditor of the estate, pressing legal proceedings to collect the payment of his claim. It also appeared that he, or his firm, represented Edwin Booth, plaintiff's testator, for the purpose of making loans of money for Booth. The executors of this estate were Joseph Campbell, a son of the deceased, and Emma Campbell and Martha Campbell, two daughters of the deceased. The evidence shows that they were extremely simple people, with little business capacity or experience. Mr. Arnoux and his firm disclaim the position of acting at this time as attorneys or advisers of the executors. It is undisputed, however, that during all this proceeding they were without legal advisers at all, except for the advice that they received from Mr. Arnoux. This being the condition of affairs, Mr. Phyfe, a son-in-law of the testator, went to see Mr. Arnoux, and had a conversation with him, at which he said that the family were greatly distressed over the matter of his (Arnoux's) claim; that, if this claim was prosecuted, it would probably ruin them. And Phyfe asked Mr. Arnoux what could be done in regard to it. Mr. Arnoux testified that at this interview with Phyfe the first question put to him was whether or not the estate could make a mortgage, and that he looked at the will, and said, "No." Thus it is not disputed that, at the commencement of the negotiations which resulted in the execution of these papers, Mr. Arnoux was acquainted with the terms of the will, and must be presumed to be familiar with the legal obligations of these defendants as trustees. He advised Mr. Phyfe that these trustees could not execute a mortgage. Mr. Phyfe then wanted to know whether the property could be sold, and on what conditions, and was told that it was "an unlimited and unrestricted power of sale; that would enable them to sell in just the same way as they could if it was sold by a private individual dealing in regard to his own property." As to this advice in regard to the first proposi-

tion,—as to whether the property could be mortgaged,—we can find no fault, but the same cannot be said as to the advice given to the second question. And it is because of this advice, namely, that these trustees could use this property and deal with it as if it was their own property,—as if it belonged to them to do with as they wished,—that the conveyances were made, and the mortgage given which is attempted to be foreclosed in this action. Other questions were asked by Mr. Phyfe,—whether a loan could be made on the deed or conveyance which was to be given, if a sale was effected, and they did not realize sufficient money from such sale; and to this Mr. Arnoux replied:

"Certainly; that a person could sell a piece of property, and take a mortgage, and assign the mortgage, or could get a mortgage direct to the lender of the money, as an advance on account of the purchase money."

It seems that certain property, known as the "Ninety-Eighth Street Property," was or had been owned by the wife of Mr. Phyfe, who had instigated this negotiation, and about this time Mrs. Phyfe had offered to convey to Mr. Arnoux the title to the Ninety-Eighth street property, as security for this judgment which had been assigned to him by the Chemical National Bank, and that a conveyance of such property was executed and delivered to Mr. Arnoux. So that, at the time of this negotiation between Mr. Arnoux and the executors, he held the legal title to the Ninety-Eighth street property, which he says was held as security for this judgment, which was against Phyfe & Campbell as well as against the executors of the estate, but which title was absolute on its face. The Chemical Bank judgment was not a lien upon the property. After this interview between Mr. Arnoux and Mr. Phyfe, Mr. Arnoux wrote a letter to Mr. Joseph Campbell, one of the trustees, as follows: "Dear Sir: Mr. Phyfe has made me a proposition, which, if you join in, I will carry out, and I believe it will relieve your property from the lien of my judgment." In response to this letter, Mr. Campbell called upon Mr. Arnoux, and advised with him about the proposition discussed between Mr. Arnoux and Mr. Phyfe, and subsequently the other executors had interviews with Mr. Arnoux. The proposition which had been discussed between Phyfe and Mr. Arnoux was discussed with the executors, and the defendants swore that they relied entirely upon the advice given by Mr. Arnoux as to what was proper and legal for them to do. At any rate, under the direction and management of Arnoux, or his firm, the conveyances were made, and the mortgage, to foreclose which this action was brought, executed. What Mr. Arnoux advised these executors to do. and what, under his advice, they did do, was as follows: The executors and trustees executed a deed conveying the property covered by this mortgage to one George T. Arnoux, a brother of Mr. William H. Arnoux, expressing a consideration of $30,000. Mr. George T. Arnoux at once executed a mortgage to the plaintiffs' testator to secure the sum of $16,500. Four checks aggregating that amount were drawn by Arnoux, Ritch & Woodford to the order of George T. Arnoux. One for $7,521.47 was indorsed by George T. Arnoux to the defendant Joseph Campbell, executor, and by him indorsed to Arnoux, Ritch & Woodford. One for $8,000 was

indorsed by George T. Arnoux to Joseph Campbell, executor, and by him indorsed to William H. Arnoux. One for $300 was indorsed by George T. Arnoux to Joseph Campbell, executor, and by him indorsed to Arnoux, Ritch & Woodford. At the same time there was executed a mortgage to secure to the defendants, trustees, the balance of what was called the purchase money specified in the conveyance, viz. $13,500. That mortgage was not delivered to the trustees directly, but was retained by Mr. William H. Arnoux, or by Arnoux, Ritch & Woodford, was not recorded, and subsequently appears to have been satisfied by the trustees, under the direction of Arnoux, Ritch & Woodford, or Mr. Arnoux; no money, however, having at any time been paid by George T. Arnoux to the trustees. George T. Arnoux at the same time executed an instrument by which he formally gave possession of the premises to the trustees, although it appeared that the trustees were in possession at the time of the execution of these conveyances, and such possession continued without interruption, and has continued down to the time of the trial. During all this time the only legal adviser of the parties, the plaintiffs' testator, Phyfe, Mrs. Phyfe, and the Campbell trustees, was Mr. William H. Arnoux, or Messrs. Arnoux, Ritch & Woodford. They acted as agents for the plaintiffs in the making of the loan. They certainly advised with Phyfe and the trustees under the will of Campbell as to the form of making this sale, or what upon its face was a sale, and as to the disposition to be made of the proceeds realized.

We can now consider just what proposition was discussed between Phyfe and Mr. Arnoux, which Mr. Arnoux has referred to in his letter to Campbell as a proposition which Mr. Phyfe had made to him, and "which, if you join in, I will carry out, and I believe it will relieve your property from the lien of my judgment." This proposition was that the sum of $16,500 was to be raised by the mortgage to be made by this "purchaser," and that that money was to be applied to the improvement or completion of the unfinished houses upon the Ninety-Eighth street property, the title to which was in Mr. William H. Arnoux. We fail to find any testimony tending to show that any agreement existed, either verbal or written, by which, as between Mr. Arnoux and the estate, the estate could enforce any obligation of Arnoux to hold this property as security for the payment of this judgment, or as security for the repayment to the estate of the amount which the estate had paid to Mr. Arnoux to be used in the completion of these buildings. Mr. Arnoux did not agree to repay to the estate that sum of money, the proceeds of this mortgage. The proceeds were largely in excess of the sum due to Mr. Arnoux on this judgment; the amount of the judgment being slightly over $12,000, while the amount which was paid to Mr. Arnoux of the money of the estate was in the neighborhood of $16,500. Nor was there any evidence of any agreement by Mr. Arnoux, or any one else, by which this Ninety-Eighth street property could be held as security for the payment of any debt of Phyfe & Campbell or of this estate, or that upon the completion of the Ninety-Eighth street houses they would be sold, and the proceeds applied in any way to the benefit of the estate, except so far as this verbal agreement before mentioned,

if carried out, would relieve the estate from the payment of Mr. Arnoux's judgment.   Thus there was what appeared to be a sale of this property by the defendants, as trustees, in the execution of a power of sale which provided, "if at any time my executors    *    *    * shall deem it for the best interest of my said estate that any part or parts, or all, of my real estate should be sold, then I authorize and empower my executors, as such,    *    *    *    to sell and dispose of any real estate,    *    *    *    and any part or parts thereof," from which the sum of $16,500 was realized by a mortgage upon the premises. That money was applied to the completion of houses upon property of another, without any formal agreement which could be enforced by the estate furnishing the money, or which could be of benefit to the estate,—all done under the advice of the person in whom is vested the legal title to the property which was to be improved; and a court of equity is asked to say that this is an exercise of the power of sale by these trustees, and a sale of the property thereunder.   It seems to us entirely clear that there was no sale; that no sale was ever contemplated or attempted between the parties, that no possession of the premises was ever delivered, and that it was known to every party connected with the transaction that this was to be a mere conveyance, which would apparently execute the power of sale, but which would in reality be a mortgage to secure this $16,500 to be expended upon this property owned by Mr. Arnoux.   We think, therefore, on this uncontradicted evidence, there was never an exercise of the power of sale, that no title passed to the grantee in the deed from the executors, and that the property is still the property of this estate.   It is hardly necessary to cite authorities to sustain this proposition.   What was said, however, by Judge Finch, delivering the opinion of the court in Scholle v. Scholle, 113 N. Y. 274, 21 N. E. 84, applies:

"The power of sale given by the will was to sell at times or in a manner which the executors should deem for the best interest of the estate.   The authority contemplated—First, a sale; and, second, the exercise of a judgment as to the best interest of the estate.   Here there was, in truth, no sale such as the will contemplated.   That was one for the purpose of realizing proceeds to be invested as the source of income and interest, and at a time when such value could be realized as would justify a sale, instead of further delay for an appreciation of value.   Nothing of that kind took place.   No proceeds were realized.   The land was appropriated to pay a debt chargeable primarily upon the personal property, without an order of the surrogate, or proof that the personal assets were insufficient to pay the debts.   The authority to sell was given for one distinct and definite purpose, and not at all to enable a disputed debt to be compromised.   The deed therefore passed no interest of the remainder-man, and the surrogate was powerless to take it away and appropriate it to the payment of debts, except in the statutory method."

And in Harris v. Strodl, 132 N. Y. 396, 30 N. E. 962, it was said:

"The power is to sell and convey whenever they may deem it best to do so, and upon such terms as they deem desirable.   It is contended that they deemed it best to convey to the defendant for the purpose of vesting in him the remnant of the title which remained unconveyed after the conveyance of the widow and children, and that they deemed the confirmation of that conveyance upon the consideration expressed in its desirable terms.   This may meet the letter of the power, but does not satisfy its spirit.   *   *   *   Clearly, they ought to have sold these so as to secure the proceeds to the grandchildren

in the event of the contingency happening, making them the ultimate devisees of the testator. But, as the case is presented, the executors made the conveyance to the defendant so as to enable the takers of the defeasible estate to keep, and convert to their own use, the full price of the whole estate, as if their children had no contingent future estate in it. The plaintiff has full knowledge of all these facts."

But in what position do the defendants stand? For it is quite clear that if the plaintiffs' testator, without notice, made a loan, relying upon the title of the property in George T. Arnoux, which upon its face was valid, under the recording act he should be protected. The plaintiffs' testator, however, so far as appears, was entirely ignorant that any mortgage was ever given. Mr. Arnoux, or his firm, of Arnoux, Ritch & Woodford, represented him in the transaction. They made the loan for him. And as the execution of the deed was to make a title in a third party in order to procure this loan, and as Arnoux, Ritch & Woodford and Mr. William H. Arnoux, acting as the agent or representative of plaintiffs' testator, had full knowledge of the understanding under which the deed and mortgages were given, it is quite evident that the plaintiffs' testator could not claim to have advanced the $16,500 upon the faith of this title without notice of the circumstances under which the deed was given. Notice to Mr. Arnoux, or to the firm of Arnoux, Ritch & Woodford, was notice acquired by them in the very act of making the loan and examining the title to the property; and, the plaintiffs' testator having left the question of this investment to them, the knowledge they had of the transaction must be considered to be his knowledge. While the general rule is settled that a purchaser is relieved from any concern as to the disposition by the executor or trustee of the purchase money of property purchased from the executor or trustee, this rule does not apply where the purchaser knew that the transaction was not within the usual course of administration, and had notice of the fact that the property of the estate, and the rights of the beneficiaries of the testator, were put in jeopardy by the negligent, if not fraudulent, cooperation of the purchaser or mortgagee. Moore v. Trust Co., 115 N. Y. 79, 21 N. E. 681. The language used in that case seems entirely applicable to the present case:

"The impropriety of the transaction was obvious enough, and its conduct a clear violation of that perfect good faith which the law exacts from persons dealing with an executor or other trustee respecting trust property. The defendant therefore comes directly within the rule which requires the person taking it for an object other than the general purposes of the trust, or such as may reasonably be supposed to be within the scope, or in any manner contrary to the duty of the office of executor, to look to the authority of the trustee, or he will act at his peril. He therefore acquired no interest in the property in consequence of his having loaned the money relying upon this paper title, and with notice of its inherent defects."

It seems to us clear, therefore, that the sale and conveyance to George T. Arnoux was not a valid exercise of the power conferred by this will, and the deed by which the executors purported to exercise that power was not a valid deed, by which any property of the estate was conveyed to George T. Arnoux; that George T. Arnoux never thereby acquired any title to this property; and that

the plaintiffs' testator, being chargeable with full knowledge of all the facts when the mortgage was executed, did not acquire, as against these defendants, the trustees and beneficiaries of the estate, any lien upon the property.

The judgment must therefore be reversed, and judgment entered dismissing the complaint as to these appellants. with costs of this court and in the court below.

BARRETT and RUMSEY, JJ., concur.   WILLIAMS, J., concurs in result.