JOSEPH PERSONENI, Appellant, v. JOHN McG. GOODALE, Individually and as Trustee for PAULINE ARNOUX, and as Administrator with the Will Annexed of the Estate of WILLIAM CAMPBELL, Deceased, et al., Respondents, Impleaded with Others.

Decedents' estates — creditor's proceeding to sell real property of a decedent for the payment of his debts — proceeding should not be ordered where a discretionary power of sale given by decedent's will has been exercised by his executors — purchaser under power of sale may have decree of sale in creditor's proceeding set aside.

When resort to the real property of a decedent for the payment of his debts is sought by his creditors it can only be had by virtue of the statute and the prescribed statutory proceedings must be strictly pursued. It is not intended that such statute shall take the place of adequate testamentary provision.  If the necessity for the proceeding does not exist, jurisdiction under the statutes does not exist, or at least should not be exercised.  The statutes do not contemplate the exercise of juris-

diction to sell the real property of a decedent when prior to the commencement of the proceeding there has been a sale under a valid power contained in the will. It does not matter in such case whether the power of sale is imperative or discretionary.

An unexecuted discretionary power of sale will not deprive creditors of their statutory rights to a judicial sale. But where the discretionary power of sale is exercised the necessity for sale by order of the court is entirely removed, and the creditors have adequate power to collect their debts under the will. The creditors are then in even a better position than in a case where the power of sale is compulsory although not exercised. A completed sale relieves the creditor of the necessity of a proceeding to compel its exercise.

If the personal representatives of a decedent waste or squander personal property so that it becomes insufficient to pay debts, the only resort of the creditors as to them is to enforce their personal responsibility. There is no distinction between a case where personal property is squandered and one where the proceeds of real property sold under a valid power of sale are so squandered.

A testator left a will which was duly probated. It does not mention his debts nor include an express imperative direction to sell his real property. It includes a discretionary power of sale, as follows: "If at any time my executors, or such of them as shall have qualified, the survivors or survivor of them, shall deem it for the best interest of my said estate that any part or parts or all of my real estate shall be sold, then I authorize and empower my executors as such, and the survivors and survivor of them, to sell and dispose of any real estate of which I may die seized or interested in, and any part or parts thereof, upon such terms and in such manner as they shall deem best, and for that purpose to make, execute and acknowledge all necessary deeds of conveyance therefor." This discretionary power was actually exercised by the executors as to a part of decedent's property prior to the commencement of proceedings in Surrogate's Court for the sale of his real property for the payment of his debts. Subsequently a decree was granted in that court directing such sale by the executors under the statute. This action was then brought by the person claiming title under the sale executed pursuant to the power, pursuant to sections 1638–1650 of the Code of Civil Procedure, to have it determined that said decree is not enforceable against the parcel theretofore conveyed by the executors. *Held*, that this action can be maintained by the *bona fide* holder of the property, through the sale made by the executors for an adequate consideration under the power in the will, and that the subsequent decree in Surrogate's Court for the sale for the payment of debts should not be sustained.

*Personeni* v. *Goodale*, 132 App. Div. 928, reversed.

(Argued June 6, 1910; decided October 11, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 28, 1909, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry A. Forster, John A. Weekes* and *Arthur Sutherland* for appellant.    The trial justice erred in deciding " that the Surrogate's Court had jurisdiction to direct the resale of No. 64 South Fifth avenue by the executors who previously sold or alienated it to the plaintiff's predecessors in title, or by their successor, the defendant Goodale, as administrator with the will annexed of the same testator;" in refusing to decide that " When a testator's land has been sold by his executors under a valid power of sale contained in his will and the proceeds thereof received by his executors, it cannot be resold in a subsequently instituted proceeding to sell the testator's real estate for the payment of his debts," and in refusing to decide that Goodale's " claim " that he " is entitled to sell or mortgage No. 64 South Fifth avenue for the payment of " " alleged claims against William Campbell's estate * * * in the inverse order to that in which the said parcel, and the parcel No. 62 South Fifth avenue have already been mortgaged or alienated by the executors of William Campbell, deceased, * * * is an unjust claim." (*Benedict* v. *Arnoux*, 154 N. Y. 715 ; *Glacius* v. *Fogel*, 88 N. Y. 435 ; *Matter of Heroy*, 67 Hun, 13 ; *Matter of Powers*, 124 N. Y. 361 ; *Erwin* v. *Loper*, 43 N. Y. 521 ; *Matter of Gautert*, 136 N. Y. 106 ; *Cahill* v. *Russell*, 140 N. Y. 402 ; *Campbell* v. *Hall*, 16 N. Y. 575 ; *Zoeller* v. *Riley*, 100 N. Y. 102 ; *Keokuk* v. *Missouri*, 152 U. S. 301.)   The trial justice erred in refusing to decide that " The conveyance of No. 64 South Fifth avenue by William Campbell's executors, pursuant to the power of sale contained in his will, to George T. Arnoux * * * and the receipt of the pro-

ceeds thereof by said executors was a good and valid execution of the power of sale." (*Benedict* v. *Arnoux*, 154 N. Y. 715; *Mott* v. *Clayton*, 9 App. Div. 185; *Van Winkle* v. *Constantine*, 10 N. Y. 422; *Baker* v. *Lorillard*, 4 N. Y. 261.)

*Henry B. Johnson, Adolph Freyer* and *B. C. Chetwood* for respondents. The Surrogate's Court had power to decree the sale of decedent's real property for the payment of debts which had been sold by the executors under a discretionary power of sale. (*Olyphant* v. *Phyfe*, 48 App. Div. 1; 166 N. Y. 630; *Parker* v. *Beer*, 65 App. Div. 599; 173 N. Y. 332; *Kingsland* v. *Murray*, 133 N. Y. 170; *Matter of Bingham*, 127 N. Y. 296.)

Chase, J. This action is brought to compel the determination of a claim adverse to that of the plaintiff in real property, pursuant to sections 1638–1650 of the Code of Civil Procedure. The facts are unusually complicated, and we will avoid stating them, except as they affect the determination of the questions which we will consider in this opinion.

William Campbell died April 27, 1888, seized of Nos. 62 and 64 South Fifth avenue, New York city, his only real property. He was indebted at the time of his death, but most of his indebtedness was as surety for the firm of Phyfe & Campbell, composed of his son-in-law and son.

Among the creditors of Phyfe & Campbell were Heroy & Marrener, who held four of their notes, indorsed by said William Campbell in his lifetime, aggregating $5,413.75. The indebtedness on which the testator was liable as surety grew out of real property transactions on the part of said Phyfe & Campbell. The personal property left by William Campbell amounted to $2,611.45, and after paying his funeral and testamentary expenses there remained $1,256.38, an amount wholly insufficient to pay his debts.

Campbell died leaving a will which was duly probated. It does not mention his debts nor include an express imperative direction to sell his real property. It includes a discretionary power of sale, as follows: "If at any time my executors, or

such of them as shall have qualified, the survivors or survivor of them, shall deem it for the best interest of my said estate that any part or parts or all of my real estate shall be sold, then I authorize and empower my executors as such, and the survivors and survivor of them, to sell and dispose of any real estate of which I may die seized or interested in, and any part or parts thereof, upon such terms and in such manner as they shall deem best, and for that purpose to make, execute and acknowledge all necessary deeds of conveyance therefor."

The testator, after giving three general legacies, gave, devised and bequeathed all the rest, residue and remainder of his real and personal property to his executors in trust to take possession, maintain and control the same and receive the rents and profits therefrom during the life of his wife, and upon her death he gave, devised and bequeathed six-sevenths of said rest, residue and remainder to six of his children named, in equal shares, and the remaining one-seventh thereof to his said executors in trust during the life of a named child, and, subject to such trust, to his other children.

On January 21, 1891, the executors of the will of said testator executed and delivered an executors' deed of No. 64 South Fifth avenue to George T. Arnoux, and upon the same day said Arnoux executed and delivered to Edwin Booth a mortgage upon said premises to secure a bond given by said Arnoux to Booth for the payment of $16,500 and interest that day loaned by Booth to Arnoux, which deed and mortgage were duly recorded in the register's office on the same day. It appears from the record, but not by the findings, that the proceeds of the mortgage were diverted by the executors to the use of Phyfe & Campbell in their said real property transactions out of which grew the indebtedness of Heroy & Marrener. On December 30, 1889, a payment was made upon the indebtedness of Heroy & Marrener of $1,813.26.

Letters testamentary to said executors of the will of William Campbell, deceased, were issued October 18, 1888. Within three years after the granting of such letters testamentary

and upon October 15, 1891, but after the sale under the power contained in the will and the said conveyance by mortgage by the grantee on said sale, James H. Heroy and William W. Heroy, surviving partners of Heroy & Marrener, commenced a special proceeding and filed a petition in the Surrogate's Court of New York county by which they prayed for a decree directing the disposition of the said William Campbell's real property or so much thereof as was necessary for the payment of his debts as prescribed by title 5, chap. 18, of the Code of Civil Procedure.

In said petition it was alleged that the testator died seized and in possession of Nos. 62 and 64 South Fifth avenue. The petition also expressly alleged that "Neither of said premises as your petitioners are informed and believe is now mortgaged or in any way encumbered except so far as said premises No. 64 South Fifth Avenue may be encumbered by the following instruments of record in the office of the register of the city and county of New York, to wit — " Following the allegation of the petition just quoted there is in the petition a statement of the deed of 64 South Fifth avenue to said Arnoux, heretofore mentioned, and of the mortgage by said Arnoux to Booth for $16,500, as also hereinbefore mentioned.

The executors of the will of said testator answered the petition in said special proceeding and set up as a defense " That the will of said William Campbell contained a power of sale  * * *  that pursuant to the power of sale contained in said will these executors have made a conveyance of the premises known as 64 South Fifth Avenue referred to in said petition, said conveyance being made to George T. Arnoux."

The surrogate denied the prayer of the petition, and in doing so said : " The point to be decided is, whether a valid power of sale is created by the tenth clause of the will, and if there is a power of sale whether it is one for general purposes, and if exercised whether from the proceeds arising therefrom the debts could be paid,"

He concluded that the power of sale was unlimited and broad enough to include power to sell the testator's real property for the payment of his debts. An appeal was taken from the order denying the petitioner's application, which was heard in the General Term, and is reported in *Matter of Heroy* (67 Hun, 13). In the opinion the court say : " We think the error into which the learned surrogate has fallen is in formulating the question for determination, and in not noting the distinction between a discretionary and an imperative power of sale. He made the right of a creditor to a sale of the real estate under the statute to depend upon the question whether the power of sale in the will *could* be exercised for the payment of debts. We think the more correct expression to be, that the question for determination was whether there is a power of sale in the will which *must* be exercised for the payment of debts. And that, therefore, though a power of sale may be general and unrestricted, which, if exercised, might render the proceeds of real estate, if an intention to that effect could be reasonably inferred from the will, subject to be applied to the payment of debts ; such a discretionary power of sale, *unexercised* and in the absence of any provision in the will for the payment of debts, or an expression of intention from which it could be inferred that the real estate must be sold for the payment thereof, is not sufficient to prevent creditors from enforcing payment of their debt by compelling a sale of the real estate where all the jurisdictional facts are shown, and all the proceedings have been regular and in accordance with the Code, as was concededly the position of the petitioners here." (P. 19.)

The conclusion reached by the court was that the order should be reversed " With leave to the executors to answer over with a view of showing whether the proceeds from the one piece of property sold (64 South Fifth Avenue) would leave sufficient assets in their hands out of which the debt could be paid, in which event the application should be denied, otherwise granted." (P. 21.)

No appeal was taken from such order to this court. After

the commencement of said proceeding and the decision of the surrogate denying the prayer of the petition therein, but after the expiration of three years from the time when letters testamentary were granted to the executors of the will of William Campbell, deceased, and on or about June 10, 1892, said executors sold No. 62 South Fifth avenue to Amy C. Phyfe, and said Phyfe thereupon executed and delivered a mortgage thereon to one Ann A. Morss to secure the payment of $14,000 borrowed by the said Phyfe of the said Morss on that day. The deed and mortgage so given were on the same day duly recorded in the register's office of said city.

On June 7, 1893, the said Edwin Booth died, leaving a last will and testament in and by which he appointed executors, and after the probate of said will and letters testamentary were issued to said executors, and on September 9, 1893, the said executors of said Edwin Booth, deceased, commenced an action to foreclose the mortgage given by said Arnoux to their testator, the said Booth, on said property, No. 64 South Fifth avenue. In that action the general creditors of William Campbell were not made parties. An answer was interposed by the executors of the will of Campbell in which they attacked their power to sell said 64 South Fifth avenue as well as the good faith of the transaction by which the deed was given by themselves to said Arnoux. The result of the trial of that action was a judgment in favor of the plaintiff for the foreclosure of the mortgage.

An appeal was taken from such judgment to the Appellate Division where it was held that the sale and conveyance to Arnoux was not made in good faith and that it was not a valid exercise of the power conferred by the will; that the attorney representing the mortgagee had knowledge of the purpose of such sale and conveyance and that his knowledge was attributable to the plaintiff's testator, and that the mortgage did not constitute a lien upon the property.

The judgment of the Special Term was reversed and the plaintiff's complaint dismissed. (*Benedict* v. *Arnoux*, 7 App. Div. 1.) An appeal was taken from such judgment of reversal

to this court.    The decision is reported in *Benedict* v. *Arnoux* (154 N. Y. 715).    It was held that when an agent forms the purpose of dealing with his principal's property for his own benefit and advantage, or for the benefit and advantage of other persons who are opposed in interest, the presumption that he has disclosed all the facts that have come to his knowledge does not prevail, and his knowledge is not imputable to his principal.

It was further held that the plaintiffs were entitled to enforce the mortgage as it was given by a grantee who obtained a deed which upon its face is an absolute deed for a full consideration and apparently within the power conferred by the will.

The judgment of the Appellate Division was reversed and that of the Special Term affirmed.    Thereafter and on March 25, 1898, No. 64 South Fifth avenue was sold pursuant to the decree in such foreclosure action and the property was purchased by the plaintiffs in that action, the executors of said Booth.

The mortgage given on No. 62 South Fifth avenue by Phyfe was subsequently assigned, and the assignee of said mortgage commenced an action for the foreclosure thereof.    The surviving partners of the firm of Heroy & Marrener were made parties to that action and they and other defendants interposed answers to the complaint.    A decree was entered therein for the foreclosure of said mortgage.    An appeal was taken from such decree to the Appellate Division by the surviving partners of the firm of Heroy & Marrener and also by other defendants, and the decision of the Appellate Division is reported in *Olyphant* v. *Phyfe* (48 App. Div. 1).

It appeared in that action that the deed to Phyfe was given after the commencement of said special proceeding and the judgment was reversed as against Heroy et al., the petitioners in the special proceeding, and affirmed as to the others.

An appeal was taken from the judgment so far as it reversed the judgment of the Special Term as against Heroy et al., and the decision (affirming the judgment on the opinion below) is reported in *Olyphant* v. *Phyfe* (166 N. Y. 630).

On April 25, 1899, the plaintiff without actual notice of the claim of Heroy et al. and of the other general creditors purchased of the executors of Booth said 64 South Fifth avenue, paying therefor an adequate consideration, and entered into possession of the same, which possession he has retained since that time. The special proceeding remained for several years after the decision reported in 67 Hun, 13, without action being taken therein. Subsequently the parties proceeded therewith and a decree was obtained therein directing the sale of the decedent's real property 62 and 64 South Fifth avenue for the payment of his debts. The decree provides for the sale of said real property in the inverse order of its alienation by the executors. That decree is dated October 17, 1905. This action was commenced a few days thereafter to have it determined that said decree is unenforceable against 64 South Fifth avenue. The Special Term rendered judgment dismissing the plaintiff's complaint. An appeal was taken therefrom to the Appellate Division, where the judgment was affirmed, without opinion. (*Personeni* v. *Goodale,* 132 App. Div. 928.) An appeal was taken from such judgment to this court.

The questions which we will consider in determining this appeal are: 1. Can a special proceeding be maintained for the sale of a decedent's real property where the decedent left a will including a valid discretionary power of sale to his executors, which, before the commencement of the special proceeding, was exercised by said executors and a sale actually made by them? 2. Where the facts appear in the petition on which the special proceeding is based, can such sale be attacked by a *bona fide* holder of the real property in an independent action?

. The proceeding to sell a decedent's real property to pay his debts is statutory. When resort to the real property of a decedent for the payment of his debts is sought by his creditors it can only be had by virtue of the statute and the prescribed statutory proceedings must be strictly pursued. (*Long* v. *Long,* 142 N. Y. 545; *Kingsland* v. *Murray,* 133 N. Y.

170; *Hogan* v. *Kavanaugh*, 138 N. Y. 417; *Duryea* v. *Mackey*, 151 N. Y. 204.)

A brief statement of the statutes to enable creditors to sell the real property of a decedent for the payment of his debts is necessary in determining the questions considered. With certain exceptions relating to specialties and matters of record not necessary to mention here, a decedent's real property was not assets available for the payment of his debts by the English common law. The first statute on the subject ever enacted in this state is chapter 27 of the Laws of 1786, by which a proceeding was authorized before the judge of the Court of Probate, and upon the hearing in which proceeding upon certain proof the judge was authorized to "Order and direct the whole if necessary, or if not, so much of the real estate of such testator or intestate *then remaining unsold*, to be sold as will pay his or her debts."

When the provisions for the sale of the real estate of testator or intestate were included in the Revised Statutes of 1829 it was therein provided that the surrogate before whom the proceedings under the Revised Statutes were to be instituted "Shall make no order for the mortgaging, leasing, or sale of the real property of the deceased, until upon due examination he shall be satisfied :

"1.   *   *   *.

"2. That the debts,   *   *   *   are not secured by judgment or mortgage upon, or expressly charged on, the real estate of the deceased ;   *   *   *." (Revised Statutes, part 2, chap. 6, title 4, sec. 14.)

And it is also therein provided "In no case shall land devised, expressly charged with the payment of debts, be sold under any order of a surrogate." · (Revised Statutes, part 2, chap. 6, title 4, sec. 20.)

On the enactment of chapter 18 of title 5 of the Code of Civil Procedure in 1880 there was included therein all of the statutory provisions relating to the disposition of a decedent's real property for the payment of debts. (Code Civil Procedure, secs. 2749–2801.) Section 2749, which so far as it

affects the question now under consideration is the same now as it was when it was first enacted in 1880, is as follows : " Real property, of which a decedent died seized, and the interest of a decedent in real property, held by him under a contract for the purchase thereof, made either with him, or with a person from whom he derived his interest, may be disposed of, for the payment of his debts and funeral expenses, or for the payment of judgment liens existing thereon at his death, as prescribed in this title ; except where it is devised, expressly charged with the payment of debts or funeral expenses, or is exempted from levy and sale by virtue of an execution, as prescribed in title second of chapter thirteen of this act.     *     *     *."

It is provided by section 2754, which is also, so far as it relates to the questions now under consideration, the same as it was when first enacted in 1880, that when it appears to the surrogate that the debts " cannot be paid, without resorting to the real property, or interest in real property, he must issue a citation according to the prayer of the petition."

Section 2759 of the Code of Civil Procedure as enacted in 1880 provided : " A decree, directing the disposition of real property,     *     *     *     can be made only where, after due examination, the following facts have been established to the satisfaction of the Surrogate.

" 1.     *     *     *.

" 2.     *     *     *.

" 3. That they are not secured by a judgment or mortgage, or expressly charged by the will upon the decedent's real property, or interest in real property ; or, if a debt is so secured or charged upon a portion of the real property, or interest in real property, that the remedies of the creditor, by virtue of that charge or security, have been exhausted.

" 4. That the property directed to be disposed of was not effectually devised, expressly charged with the payment of debts or funeral expenses, and is not subject to a valid power of sale for the payment thereof ; or, if so devised or subject, that it is not practicable to enforce the charge, or to execute

the power, and that the creditor has effectually relinquished the same.

"5.    *    *    *."

That section remained as section 2759 and after 1894 as section 2756 in substantially the same language until it was amended by chapter 750 of the Laws of 1904 to take effect September 1, 1904, so as to read as follows:

" A decree directing the disposition of real property or of an interest in real property can be made only where after due examination the following facts have been established to the satisfaction of the surrogate:

" 1. That the proceedings have been in conformity to this title:

" 2. That the personal estate of the decedent is insufficient for the payment of his debts and funeral expenses."

By said chapter 750 of the Laws of 1904 there was added to said chapter 18 of title 5 of the Code of Civil Procedure and substituted for certain other provisions that had theretofore existed in said chapter, section 2761, as follows:

" The executor or administrator must proceed to execute the decree in the same manner, and the execution thereof shall have the same effect, as if he were acting as executor of the decedent under a like power contained in a will of said decedent duly executed and proved.   He shall apply the proceeds of the real property mortgaged, leased or sold in the same manner as if he had acted under such a power of sale contained in a will and all persons interested in the execution of the decree shall have the same remedies for the enforcement of the decree and the application of the proceeds that they would have had if the executor or administrator were acting under such a power.   The executor or administrator may account for such proceeds and may be compelled to account therefor and for his acts under such decree and shall be entitled to commissions upon the settlement of his accounts as if he had acted under such a power."

All of the statutes relating to the sale of the real property of a decedent for the payment of his debts have been passed

to provide a way, where one does not otherwise exist, to enable general creditors to secure payment of their claims out of such property when there is an insufficient amount of personal assets. It is not intended that such statutes shall take the place of adequate testamentary provision. If the necessity for the proceeding does not exist, jurisdiction under the statutes does not exist, or at least should not be exercised. The statutes do not contemplate the exercise of jurisdiction to sell the real property of a decedent when ,prior to the commencement of the proceeding there has been a sale under a valid power contained in the will. It does not matter in such case whether the power of sale is imperative or discretionary.

That jurisdiction is not intended by the statutes when there is an adequate testamentary provision is made clear by section 2759, subsequently section 2756 as it existed down to September 1, 1904. Section 2756 was materially changed in 1904, and at the same time the new section, 2761, that we have quoted was enacted. The new section also shows clearly that jurisdiction under the statutes is to be exercised where there is a failure of suitable testamentary provisions to protect the general creditor. The personal representatives of a decedent must proceed to execute the decree when obtained in the proceeding exactly the same as he would proceed under a will, and in the same way and for the same purpose distribute the proceeds, and for his services obtain his commission as if the sale was consummated under the will. It may very well be, although it is not necessary to decide it in this case, that under the statutes as they now exist, where a proceeding is commenced before the exercise of even an imperative power of sale in a will, that the court would obtain jurisdiction which in its discretion could be retained even after a subsequent sale under the will, or notwithstanding a proceeding to enable an executor to exercise the power of sale contained in such will. Where the power of sale in the will is imperative, it was, prior to 1904, frequently held that the court had no jurisdiction to decree a sale under proceedings to sell the real estate of a decedent for the payment of his debts.

Where the power of sale is discretionary and a general creditor cannot compel a satisfaction of his debt by the sale of the real estate through such a power of sale, it is not a bar to the sale under the statute because the creditor does not thereby secure as full and adequate a remedy for the payment of his debts as contemplated by the statute or as he is entitled to in equity.

The conclusion of the courts in the cases where this has been decided is based upon the purpose of the statutes and the necessity of the conclusion which has been reached to carry out such purpose. Where the discretionary power of sale is exercised the necessity for a sale by order of the court is entirely removed, and the creditors have adequate power to collect their debts under the will. The creditors are then in even a better position than in a case where the power of sale is compulsory although not exercised. A completed sale relieves the creditor of the necessity of a proceeding to compel the exercise of a power of sale.

In *Glaucius* v. *Fogel* (88 N. Y. 434) this court, in considering the amount that executors had in their hands including the proceeds of real property sold under a power of sale in a will, say : " Under the will the entire real estate was devised to and vested in them and the account shows that they received large amounts upon an award, for rents and real estate sold. The amounts thus received were assets for the payment of debts and distribution among legatees after the payment of debts. The real estate could not be reached under proceedings to sell under 2 R. S. 209, section 53, and the other acts relating to that subject, for it had already been sold and the moneys arising therefrom as well as from the rents and the award had been paid over to the representatives. They received it for the estate and were clearly liable to account therefor to the petitioner." (P. 444.)

In *Coogan* v. *Ockershausen* (11 Civ. Pro. Rep. 315, 317) the court held that there was a valid implied power of sale in the will under consideration for the payment of decedent's debts. It was said in the opinion :

" I am therefore of the opinion that the creditors have no claims upon the land and will have none excepting through the implied charge and power of sale that have been specified. The plaintiff (a person to whom the defendant executor had contracted to sell real property under the will) is under no obligation to see to the proper disposition of the purchase money." (*S. C.*, 18 N. Y. S. R. 366.)

In *Dennis* v. *Jones* (1 Dem. 80), Rollins, Surrogate, was asked to confirm the report of a referee in a proceeding to sell real estate for the payment of debts. Objection was made, and it was held that the will contained a valid power of sale and the application was denied. The court say : " Although section 2749, which declares what property may be disposed of for the payment of debts and funeral expenses, excepts from such disposition only such property as is effectually devised expressly charged with the payment of debts or funeral expenses, it is evident that section 2759, just cited, exempts also such property as is subject to a valid power of sale for the payment of such debts or expenses. Before the petitioner, therefore, can entitle himself to a decree in this proceeding, it is incumbent upon him to satisfy the surrogate that there is no such devise and no such power of sale affecting this property ; for if either exists this court is powerless to make the decree. The language of the Code seems to me to express this meaning clearly, and to be susceptible of no other. \* \* \* In the absence of any evidence that it is impracticable to execute the power of sale in the present case, and that the creditors have relinquished their right or claim to its exercise, I am forced to the conclusion that the present proceedings are not only needless, but invalid."

In *Erwin* v. *Loper* (43 N. Y. 521) this court, referring to a sale by executors under a power of sale in a will, say : " Upon the conversion of the real estate into money, by a sale under the power, the same became assets in the hands of the executors for the payment of debts and legacies ; and the executors were liable to account for it, as for any other assets that might come to their hands (*Clark* v. *Clark*, 8 Paige, 152), but so

much of the avails of the real estate sold as were not required for the payment of the debts, legacies and expenses of administration belonged to the devisees as the land belonged to and would have been held by them but for the execution of the power of sale by the executors." (P. 525.)

In *Matter of Gantert* (136 N. Y. 106) this court, referring to a power of sale in a will, say : "If the power had been effectually *exercised* in part the proceeds could be treated as assets available for the payment of debts, and, until exhausted, there could be no recourse against the other lands of the decedent." (P. 113.)

In *Matter of Powers* (124 N. Y. 361) this court say : "Assuming that it was within the contemplation of the testatrix that if deemed by him necessary to do so, the executor might exercise the power of sale for the payment of debts, that would not have the effect to make the debts a lien upon the real estate, but rather that the proceeds of realty produced by sale for that purpose would be assets in his hands applicable to the payment of them. Such would be the result of the exercise of a general power of sale." (P. 368)

In *Cahill* v. *Russell* (140 N. Y. 402) the court say : " The executor had power to sell, and it is not important to determine whether the power is imperative or not. The executor is seeking to enforce it, and when *executed* the real property will be *converted into personalty*, and thus rendered available for the general purposes of administration, including the payment of debts and legacies." (P. 408)

It does not affirmatively appear by the findings in this action that the proceeds of the sale and mortgage of 64 South Fifth avenue were squandered by the executors or that such proceeds cannot be collected from them or their representatives. In any event if the personal representatives of the decedent waste or squander personal property so that it becomes insufficient to pay debts, the only resort of the creditors is to them to enforce their personal responsibility. (*Kingsland* v. *Murray, supra ; Matter of Meagley*, 39 App. Div. 83.) We see no distinction between a case where personal property is

squandered and one where the proceeds of real property sold under a valid power of sale are so squandered.

It has been determined in this case that there was a valid power of sale under the will of William Campbell, which could be exercised by his executors for the payment of his debts. The power of sale was discretionary, but so far as No. 64 South Fifth avenue is concerned, it was actually exercised by the executors prior to the commencement of the proceedings for the sale of the decedent's real property for the payment of his debts.

Plaintiff claims under grantors who obtained their title in good faith. Such title in good faith is not attacked in this action. Upon the exercise of the power of sale the proceeds thereof became personal property in the hands of the executors, at least for the payment of debts. (9 Cyc. 835, 836 ; 7 Am. & Eng. Ency. of Law, 467.) The adequacy of the power of sale, although discretionary, cannot be criticized, because the discretion has been exercised and the sale consummated. We are of the opinion that the Surrogate's Court did not obtain jurisdiction to entertain the proceedings as against 64 South Fifth avenue.

Where there is a lack of jurisdiction in the Surrogate's Court, and particularly where it appears in the petition, it can be attacked in an action brought for that purpose. Plaintiff was not brought in as a party to the special proceeding, and the executors of Edwin Booth, deceased, were not brought into the proceeding after his death, which occurred long before any action in the proceeding after the decision reported in 67 Hun, 13.

The respondents have presented to this court but two cases which they contend support their contention that the court obtained jurisdiction in the proceeding as against the plaintiff. The cases are *Olyphant* v. *Phyfe* (*supra*) and *Parker* v. *Beer* (173 N. Y. 332).

The first case we have mentioned herein. In that case the court had under consideration the foreclosure of the mortgage on 62 South Fifth avenue, and the title to be obtained under

such foreclosure as against the petitioners in the real property proceeding. In that case as we have already seen the mortgage under which the plaintiff in that action claimed was not given until after the commencement of the proceeding. When the proceeding was commenced as against 62 South Fifth avenue the court obtained jurisdiction therein and it was a matter of discretion in the court whether it would thereafter maintain its jurisdiction or refuse to maintain its jurisdiction and leave the petitioners to their remedy against the executors who made the sale. The grantor and mortgagee of 62 South Fifth avenue obtained their conveyances with knowledge of such proceeding and subject to the right of the court to maintain its jurisdiction therein.

In the second case it was held that the power of sale given in the will could not be regarded as an express direction to sell the testator's real property for the payment of his debts, and, therefore, it not being imperative its exercise could not be compelled by a creditor. Plaintiff therein contracted to convey certain real property to the defendant. The defendant refused to take the title upon the ground that the plaintiff could not convey a title that was clear and marketable. A sale under the will had not been consummated. Until actually consummated it did not prevent the Surrogate's Court from assuming jurisdiction to sell the real property for the payment of debts.

In the first of these cases the question now under consideration as to the jurisdiction of the Surrogate's Court in a case where a valid power of sale had been exercised before the commencement of a proceeding to sell for the payment of debts, was not before the court and anything that was said therein affecting that question as now under consideration was obiter.

In the second case we affirm what was then said so far as it holds that an unexecuted discretionary power of sale will not deprive creditors of their right to a sale pursuant to the statute.

We are of the opinion that as against 64 South Fifth avenue

and the plaintiff the decree in the proceeding for the sale of the decedent's real property for the payment of his debts should not be sustained.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Cullen, Ch. J., Haight, Vann and Werner, JJ., concur; Gray, J., dissents; Willard Bartlett, J., absent.

Judgment reversed, etc.