In the Matter of the Estate of ABIGAIL CUNNIFF, Deceased.

THIRZA CUNNIFF, Appellant; HERBERT C. CUNNIFF, Respondent.

(Argued September 29, 1936; decided November 24, 1936.)

*M. James Conboy* and *J. Stanley Carter* for appellant.

*Isaiah Fellows* for respondent.

LEHMAN, J. Abigail Cunniff died intestate on the 12th day of April, 1933. Letters of administration on her estate were issued to Herbert C. Cunniff on the 18th day of May, 1933. The administrator began proceedings in January, 1935, for the settlement of his accounts. In July, 1935, while the proceedings were still pending, Thirza Cunniff filed a petition praying that the administrator " be cited to show cause * * * why a pro-

ceeding should not be commenced by him under article 13 of the Surrogate's Court Act for the sale of the real estate of the decedent for the purpose of paying the decedent's debts." The administrator in his answer to the petition urged that any lien of creditors upon the decedent's real property or the proceeds thereof had expired after eighteen months from the grant of letters of administration on the decedent's estate, and that a creditor could not thereafter initiate any proceeding in the Surrogate's Court to compel the sale of such property. (Surrogate's Court Act, § 233.) The Surrogate decided that a creditor might file a petition for such relief during the pendency of proceedings for the judicial settlement of the accounts of an executor or administrator, though more than eighteen months had passed since the date when letters first issued to the executor or administrator, and made an order granting the relief for which the creditor prayed. The Appellate Division has reversed the order and dismissed the petition.

The verified claim of the petitioning creditor was presented to the administrator in November, 1933. He rejected the claim. It was allowed by the Surrogate in May, 1935, in the proceedings for the settlement of the executor's accounts. The personal property of the decedent with which the administrator is chargeable is insufficient to pay the claim. The decedent owned some real property also. One of the decedent's next of kin brought an action for its partition before eighteen months had elapsed from the grant of letters of administration and, in accordance with the provisions of section 1045 of the Civil Practice Act, the judgment entered in that action directed that the proceeds of the sale of the real property be deposited with the County Treasurer to await the further order of the court. The creditor now seeks in this proceeding to reach these proceeds.

" The proceeding to sell a decedent's real property to pay his debts is statutory. When resort to the real

property of a decedent for the payment of his debts is sought by his creditors it can only be had by virtue of the statute and the prescribed statutory proceedings must be strictly pursued. * * * With certain exceptions relating to specialties and matters of record not necessary to mention here, a decedent's real property was not assets available for the payment of his debts by the English common law. The first statute on the subject ever enacted in this State is chapter 27 of the Laws of 1786." (*Personeni* v. *Goodale*, 199 N. Y. 323, 332.) The statutory provisions governing disposition of the real property of a decedent for the payment of his debts are now contained in article 13 of the Surrogate's Court Act and especially in sections 233 to 236 thereof. The only question to be decided upon this appeal is whether under these sections a Surrogate has power to order the sale of a decedent's real estate, to pay his debts, upon the application of a creditor made more than eighteen months after the grant of letters of administration, but during the pendency of proceedings for the judicial settlement of the administrator's accounts.

The content and general purpose of these sections is indicated by their titles. Section 233 defines the " real property subject to disposition for the satisfaction of charges against the same and for distribution." Section 234 enumerates " for what purposes real property is subject to disposition," and section 236 decrees " when and how real property may be mortgaged, leased or sold."

Section 236 provides in part that " a verified petition may be filed by an executor or administrator or by any person interested for an order to mortgage, lease or sell the real property of the decedent for any of the purposes specified in section two hundred and thirty-four of this act, which shall set forth * * * the condition of the estate, and if the petition be entertained by the surrogate a citation shall issue to all persons interested, and also

to the creditors if the surrogate shall direct. And upon a judicial settlement of the accounts of an executor or administrator, any party to the proceeding may allege and show by proof such facts and circumstances as are required to give the court jurisdiction to order the mortgage, lease or sale of the real property left by the deceased. * * * Where such relief is sought upon an accounting notice of such application to sell, mortgage or lease, shall be given in the citation." The creditor here was a party to the proceeding for the judicial settlement of the accounts of the administrator. She has alleged and shown by proof the facts and circumstances "required to give the court jurisdiction" to order the sale of the real property left by the deceased in accordance with the provisions of that section. The Surrogate correctly made the order, unless by section 233 the Legislature intended to limit the time for such application to the period of eighteen months from the grant of letters.

Section 233 provides that no real property or interest in real property of which a decedent died seized, " shall be mortgaged, leased or sold under an order in surrogate's court to satisfy any claim, debt or demand, unless the proceeding therefor, or the proceeding in which such relief is asked, shall have been commenced within eighteen months from the date when letters first issued to an executor or administrator, or unless the proceeding in which such relief is asked shall have been commenced by an executor or administrator during the pendency of a proceeding for the judicial settlement of his accounts and in such case only in case the real property or interest therein sought to be disposed of has not been aliened or incumbered by the distributees or by the devisees of a decedent prior to the institution of such proceeding." It is plain that, after eighteen months from the date when letters first issued, no proceeding to sell the property may be commenced by an executor, administrator, creditor or other person, unless a proceeding for the judicial settle-

ment of the accounts of an executor or administrator is then pending. It is equally plain that the effect of this section is "to authorize an executor or administrator to petition for the sale of real property for the payment of debts and administration expenses in an accounting proceeding *whenever had.*" (*Matter of Collins,* 122 Misc. Rep. 265, 266, per FOLEY, S.) The question remains whether in a pending judicial proceeding for the settlement of his account an executor or administrator may be compelled, upon the return of an order to show cause obtained by a creditor, to commence a proceeding for such relief or whether, after eighteen months have expired since letters first issued, payment of the debts of a decedent out of his real property depends not upon the merits of the creditor's position but upon the untrammeled will of the executor or administrator.

A brief survey of the history of the statutory provision for the sale of the real estate of a decedent, and the changes made from time to time in the procedure required, will serve to clarify the legislative intent embodied in section 233. The original statute (Laws of 1786, ch. 27) required that an executor or administrator who " shall discover or suspect that the personal estate of his, her or their testator or intestate is insufficient to pay his or her debts," should " as soon as conveniently may be make a just and true account of the said personal estate and debts as far as he or she can discover the same and deliver the said account to the judge of the court of probates of this State for the time being and request his aid in the premises." Then, after notice to all persons interested, the judge was required to hear and examine " the allegations and proofs of such executors or administrators and of all such other persons interested in such estate as shall think proper to make or offer any; and if upon due examination, the said judge shall find, that the personal estate of such testator or intestate, is not sufficient to pay his or her debts, the said judge shall direct the whole, if

necessary, or if not, so much, of the real estate of such testator or intestate, then remaining unsold, to be sold, as will pay his or her debts." Thus in that statute the duty was placed upon the executor or administrator to request the aid of the judge of the court of probate so that creditors might be paid out of real property of a decedent if the personal property was insufficient and the filing of an account of the personal estate and debts must precede the making of any order to sell real estate.

During the succeeding forty years some additional or amendatory legislation was enacted, which, however, throws no light upon the question here presented, but under the Revised Statutes of 1829 the statutory provisions assumed a form and content more nearly analogous to those now in force. Then it was provided that after the executors and administrators of a decedent shall have made and filed an inventory according to law " if they discover the personal estate of their testator or intestate, to be insufficient to pay his debts, they may, at any time within three years, after the granting of their letters testamentary or of administration, apply to the surrogate for authority to mortgage, lease or sell so much of the real estate of their testator or intestate, as shall be necessary to pay such debts." (R. S. pt. 2, ch. 6, tit. 4, § 1.) Under the same title provision was made for the issuance upon the application of a creditor of an order on the " executor or administrator, to show cause why he should not be required to proceed and sell, or otherwise dispose of, the real estate of the deceased, for the payment of his debts." (§ 48.)

The substance of both these sections of the Revised Statutes was incorporated with some changes in chapter 460 of the Laws of 1837 entitled: "An Act concerning the proof of wills, executors and administrators, guardians and wards, and surrogates' courts." Section 48 (*supra*) was in terms repealed, but in place thereof the Legislature substituted a new section which reads, in part, as follows:

" If after the rendering of an account by an executor or administrator to a surrogate as is provided in chapter sixth, part second, title fourth of the Revised Statutes, it shall appear that there are not sufficient assets to pay the debts of the deceased, the surrogate, upon the application of any creditor made at any time after the granting of letters testamentary or of administration, shall grant an order for such executor or adminstrator to show cause why he should not be required to mortgage, lease or sell the real estate of the deceased for the payment of his debts." (§ 72.)

Without substantial change these provisions remained upon the statute books until 1880. The Legislature, in these provisions, placed upon an executor or administrator the duty, in proper case, to bring proceedings, within three years of the grant of letters, for the sale of real property of a decedent for the payment of his debts. A creditor could not initiate such proceedings. Nevertheless, creditors were not left at the mercy of the executor or administrator, for after the filing of the account of the executor or administrator, a creditor might compel him to act. Since creditors could not take such action until the filing of the accounts, it was held that limitations contained in the Code of Procedure did not begin to run until such filing.

The Legislature by chapter 178 of the Laws of 1880 revised the statutory provisions governing the disposition by proceedings in the Surrogate's Court of a decedent's real property for the payment of his debts. They have been summarized in the opinion of this court in *Matter of Haxtun* (102 N. Y. 157). A member of the Commission which drafted the legislation made note that " The most noticeable change, thus made, consists of the extension, to a creditor, of the right to institute proceedings in the first place; whereas, the former statute required him to proceed circuitously, by taking proceedings to compel the executor or administrator to make the application."

(Throop's Code of Civil Procedure [1880 ed.], pt. 2, p. 635.) As a corollary to that change the statutory limitation upon such proceedings, whether brought by the executor or administrator or by a creditor, began to run from the time letters upon the estate were issued and was complete three years thereafter. The creditor's rights at that time were defined by this court as follows: " The debts of a decedent can be ordered to be paid out of his real estate or by his heirs or devisees only in the manner provided by statute. During three years after his death his creditors have a kind of statutory lien upon the real estate left by him, and such real estate cannot be so aliened by his heirs or devisees during that time as to defeat the claims of creditors thereon (2 R. S. 100, etc.; Code, sections 2749, etc.). After the expiration of the three years the debts of the decedent may be enforced against the heirs and devisees in the mode specified in the statute, and they then cease to be a lien or charge in any sense upon the real estate." (*Platt* v. *Platt*, 105 N. Y. 488, 497.)

In 1914 after a report by a Commission Appointed to Revise Practice and Procedure in the Surrogate's Court, these provisions were again revised and became article third of title IV of chapter XVIII of the Code of Civil Procedure. Then it was provided that " no such property, or interest in property, shall be mortgaged, leased or sold under a decree in surrogate's court to satisfy any claim, debt, or demand, unless a proceeding for a judicial settlement, or to compel a settlement, of the accounts of an executor or administrator shall have been commenced within eighteen months from the date when letters first issued to an executor or administrator." (§ 2702.) Though an amendment made in 1918 restored the provision that a creditor might ask for the sale of the real property in an independent proceeding brought by him, such relief was barred " unless the proceeding therefor, or the proceeding in which such relief is asked, shall have been commenced within eighteen months from the date when

letters first issued." (Laws of 1918, ch. 317.) A revisers' note indicates that since a creditor could by prompt presentation of his claim compel a judicial settlement of the accounts of an executor or administrator, it was believed that in order to facilitate transfers of property, the duration of a creditor's lien could properly be reduced by requiring that any proceedings in which enforcement of the lien was asked should be initiated within eighteen months instead of within three years after the issue of letters. A creditor whose lien was barred by the statute might still bring an action against heirs or devisees under section 1837 of the Code of Civil Procedure.

In 1920 when the Legislature enacted the Civil Practice Act and the Surrogate's Court Act, the statutory limitation of eighteen months upon the bringing of any proceedings in the Surrogate's Court to compel the sale of a decedent's real property to satisfy a claim, debt or demand, contained in section 2702 of the Code of Civil Procedure, was transferred to section 233 of the Surrogate's Court Act. In 1921 section 233 was amended substantially to its present form. (L. 1921, ch. 201, § 5.) From that time the limitation of eighteen months did not apply if " the proceeding in which such relief is asked shall have been commenced by an executor or administrator during the pendency of a proceeding for the judicial settlement of his accounts," and the real property had not previously been incumbered and delivered. Section 236 of the Surrogate's Court Act (formerly section 2705 of the Code of Civil Procedure), entitled " When and How Real Property May Be Mortgaged, Leased or Sold," provided at that time, as section 2705 had provided before, that " at any time after his appointment and qualification an executor or administrator may apply for an order to mortgage, lease or sell the real property of the decedent * * *." The section further provided that " upon a judicial settlement of the accounts of an executor or administrator, any party to the proceeding may allege and show by proof such facts and circumstances as are required to give the court juris-

diction to order the mortgage, lease or sale of the real property * * *." The section did not in terms provide procedure by which a creditor could himself initiate proceedings for the sale of real estate. The omission was corrected thereafter so that " any person interested " as well as an executor or administrator, was by the express terms of the statute authorized to file a verified petition for the mortgage, lease or sale of the real property of the decedent. So far as concerns the question presented upon this appeal the statute otherwise remained unchanged since that time in spite of formal amendment.

In the administration of the estate of a decedent, his executor or administrator has at all times been subject to a duty to pay the debts of the decedent to the extent that assets of the decedent which *came into the hands* of the executor or administrator sufficed for that purpose. Title to real property of a decedent passes directly to his heir or devisee and is ordinarily not an asset which becomes part of the decedent's estate which his personal representatives may administer. Since the adoption of the first statute of 1786 relating to the disposition of a decedent's real property for the payment of his debts, we can trace plainly through all the changes thereafter made in the statutory provisions, a legislative intent that a decedent's real property should be made available for the payment of his debts, and that an executor or administrator might obtain an order of the probate court which would permit the payment of the decedent's debts out of his real property which had passed ·to his devisee or heir upon his death, if in the course of administration of the decedent's estate the personal property which passed to the executor or administrator proved insufficient. The duty of the executor or administrator to see that the debts of the decedent were paid out of any property of the decedent available for that purpose and the jurisdiction of the court of probate to supervise and direct the performance of that duty, existed before any of these statutes

were enacted; the statutes merely provided the means by which property *not previously available* could be used for that purpose. Then, too, we may plainly trace in all the statutes relating to the subject a legislative intent that a creditor or person interested might in proper case interpose and compel an application to the court for such relief if the executor or administrator failed to act for it, just as a person interested might, in other respects, compel a proper administration of a decedent's property and its use for the purposes to which it should be put in accordance with law.

Until a creditor has established his right to payment of his debt out of the assets of the estate and also that the personal property of the decedent is insufficient for the payment of his debts, there is no sound basis for an application to the court, either by the creditor or by the executor or administrator, for the sale of a decedent's real property. Ordinarily the filing of the accounts of the administrator or executor will precede a judicial determination of such matters and application may appropriately be made in the proceedings for the judicial settlement of such accounts. Accordingly in the original statute and in its changed forms for almost a century a creditor was compelled to await the filing of accounts before he could ask relief of the court, and the statute did not provide for the bringing of an independent proceeding for that purpose by a creditor or other person interested. Until the time had elapsed in which application might be made for the sale of a decedent's real property, an heir or devisee who had title to the property could not convey it free from a lien for the payment of decedent's debts. For that reason the Legislature early provided a definite period of three years and then of eighteen months, during which such an application might be made. The period of eighteen months might, however, in some cases prove too short for bringing an application which awaited the filing of the accounts of

the executor or administrator, so in section 233 of the Surrogate's Court Act the Legislature provided that though after eighteen months no application might be made for the disposition of real property of a decedent for the payment of his debts, where the property had been previously aliened or incumbered, such application for the disposition of property to which the heir or devisee still had title might be made by the executor or administrator at any time during the pendency of proceedings for the settlement of his accounts. Though the Legislature did not in express terms provide that if in proper case the executor failed in the accounting proceedings to make such application, a creditor might ask the court to direct such application to be made, yet in the light of the history and purpose of the statute, it is clear that the Legislature did not intend that a court of probate should be denied jurisdiction to make such directions when a creditor shows in the accounting proceedings that the personal property is not sufficient to pay the debts of the decedent and that real property would be available for such payment if the executor or administrator need the means provided by statute for that purpose.

The order of the Appellate Division should be reversed and the decree of the Surrogate's Court affirmed, with costs in this court and in the Appellate Division payable out of the estate.

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.